Argued and submitted July 21, 1989, resubmitted In Banc February 7, affirmed March 14, reconsideration denied May 16, petition for review allowed July 3, 1990
(310 Or 133)

# STATE OF OREGON,
*Respondent,*

*v.*

# LEVESTER ANFIELD,
*Appellant.*

(87-08-34634; CA A50077)

788 P2d 480

Ingrid A. MacFarlane, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Jas. J. Adams, Assistant Attorney General, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

NEWMAN, J.

Joseph, C. J., dissenting.

## NEWMAN, J.

Defendant appeals two convictions for possession of a controlled substance. ORS 475.992.[1] He assigns as error that the court denied his motion to suppress evidence obtained from him. We affirm.

At the suppression hearing, the court either found or could have found these facts. On June 8, 1987, at about 3:00 a.m., Officer Justus responded to a report of an accident in which a car had hit a tree. When he arrived at the scene, he saw another officer conversing with defendant. Defendant claimed that a friend had been driving the car but had left. Defendant was standing at the rear of the car holding a black zippered bag in one hand. He dropped the bag at arm's length onto the asphalt and walked over to the passenger side to unload the car. Justus thought the bag looked like gun bags that he had seen at a sporting goods store and at the shooting range. The bag appeared to Justus to contain something "real heavy," because it bent with the weight of its contents. When defendant dropped it on the asphalt, Justus heard a loud metallic "clunk, like, you know, two metal things crashing into each other when it hit the ground." To Justus, "it sounded like guns * * * like it was metal guns in there."

Justus lifted the bag a couple of inches off the ground, squeezed it and felt it, because "I was concerned that it had guns in it." He felt "the outlines of the guns in there." He unzipped the bag, saw two guns and arrested defendant for carrying concealed weapons. Justus then searched defendant and found in his shirt pocket a bottle of Tylenol with codeine and a small jar of tar heroin. He then searched defendant further, removed his wallet and found more tar heroin.

Defendant argues that Justus made a warrantless, illegal seizure of the bag when he picked it up and squeezed it and that he made an unlawful search when he looked into it. He also asserts that Justus did not have probable cause to arrest defendant for a weapons offense and that, even if the arrest was lawful, his search incident to the arrest was not limited to a search for evidence of the weapons offense for which defendant was arrested.

---

[1] The court dismissed two counts of unlawful possession of a weapon. ORS 166.250.

■      The court did not err in denying the motion to suppress, in which defendant relied on both Article I, section 9, and the Fourth Amendment. We address the state constitutional issue first. *State v. Kennedy,* 295 Or 260, 262, 666 P2d 1316 (1983). Under *State v. Bates,* 304 Or 519, 524, 747 P2d 991 (1987), Justus was entitled to lift and squeeze the bag, because he had acquired a reasonable suspicion, based on specific and articulable facts, that defendant was carrying concealed weapons. In *Bates,* a police officer stopped the defendant for a Class D traffic infraction, and another officer arrived to give assistance. The officers noticed an object on the floorboard under the driver's seat and asked the driver, the defendant, to pull it out. When he did not comply, one officer ordered him from the car at gunpoint and then removed the object, a closed black bag. The officer opened it and found ammunition and drugs. He explained that he had removed the bag and opened it, because he was concerned for his safety for these reasons: The vehicle had out-of-state plates; the time was 4:40 a.m.; the area was a "high crime area"; the driver's appearance disturbed him; there were a VCR and a television set on the back seat; and the driver did not comply with his instructions to remove the object from under his seat. The Supreme Court discounted all the reasons for the search except the presence of the bag.

The officers in *Bates* testified only that what they saw under the seat appeared to be a bag. They did not testify that they thought the object might be a weapon or a case designed to hold a weapon, and there was no sign of a weapon in the car. The court stated that,

> "[w]ithout any indication that the sack either was a weapon or contained one, the officers nonetheless sought to determine its contents." 304 Or at 526.

The court reversed the denial of the motion to suppress. It held that the specific facts that the officer articulated did not create a reasonable belief that the defendant posed an immediate threat. Accordingly, the officers had no authority in the light of Article I, section 9, to require the defendant to remove the bag from under his seat or to open it. The court stated, however, that Article I, section 9,

> "does not forbid an officer to take reasonable steps to protect himself or others if, during the course of a lawful encounter

with a citizen, the officer develops a *reasonable suspicion,* based upon *specific and articulable facts,* that the citizen might pose an immediate threat of serious physical·injury to the officer or to others then present." (Emphasis supplied.) 304 Or at 524.

Here, the specific and articulable facts do support the officer's reasonable suspicion that defendant posed an immediate threat of serious physical injury to him or his fellow officer and allowed him to take reasonable steps to protect himself and the other officer. Unlike in *Bates,* Justus identified the bag as a gun bag. Its heavy appearance and the metallic sound that he heard when defendant dropped it made him reasonably suspect that it actually contained guns. It was also reasonable for Justus to be concerned, as he testified that he was, that the bag might contain concealed guns. If the bag contained concealed guns, defendant might pick it up, open it and withdraw the guns. He took a reasonable step to protect himself and his fellow officer from an immediate threat of serious physical injury by lifting the bag and squeezing it to determine whether, in fact, it contained guns. Moreover, unlike in *State v. Messer,* 71 Or App 506, 692 P2d 713 (1984),[2] Justus was not engaged in "mere conversation" with defendant but, to use the words of the court in *Bates,* was engaged in a "lawful encounter": Justus was investigating an accident that involved defendant, as he had a duty to do.

When Justus lifted the bag and squeezed it, he felt the guns. That gave him probable cause, *see* ORS 131.005(11),[3] to arrest defendant for the offense of carrying a firearm concealed upon the person without a license, *former* ORS 166.250(1)(b), and to search the bag incident to that arrest. After the search of the bag, Justus arrested defendant for carrying concealed weapons. Defendant argues that probable cause to arrest was absent, because the two guns were in the bag that he had dropped on the ground and, therefore, Justus

---

[2] In *Messer,* an officer saw two persons sitting in a car parked in a lot late at night and saw a sheathed knife between them. The court held that the officer was not justified in taking steps to protect himself by seizing the knife, because there was no basis for a stop and he could leave the area if he feared for his safety.

[3] ORS 131.005(11) provides:

" 'Probable cause' means that there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it."

had no substantial objective basis for believing that defendant had carried the two guns "upon" his person. We disagree. When Justus first arrived at the scene, he saw defendant holding the bag.

■ Defendant also argues that there was no probable cause to arrest him for a weapons offense, because the officer had no reason to know whether defendant was licensed to carry the guns. The officer, however, had probable cause to arrest defendant, even though he did not know whether defendant had a license. *See State v. Gerlack,* 87 Or App 184, 186, 741 P2d 926 (1987);[4] *see also State v. Brown,* 301 Or 268, 721 P2d 1357 (1986).

■ Incident to the arrest for carrying concealed weapons, Justus could also search defendant for other weapons. In connection with that search, he discovered the Tylenol with codeine and the small jar of heroin. At that point, Justus could also search incident to an arrest for possession of a controlled substance. *State v. Flores,* 68 Or App 617, 685 P2d 999, *rev den* 298 Or 151 (1984). He then found the wallet and could open it. *State v. Owens,* 302 Or 196, 729 P2d 524 (1986); *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982). He found more heroin.

Defendant makes no separate argument under the Fourth Amendment.

Affirmed.

**JOSEPH, C. J.,** dissenting.

I dissent.

The majority begins its analysis as if it were going to talk about the constitutional law of seizures and searches under Article I, section 9, and the Fourth Amendment. Without doing that, it segues to a discussion of whether there was probable cause to arrest defendant for carrying a concealed weapon under ORS 166.250. It uses that probable cause discussion about an arrest not then made to uphold the seizure of the bag, the search of the bag and the search of defendant's

---

[4] In *State v. Gerlack, supra,* we held that the defendant had the burden to prove that he had a license to carry a concealed weapon.

person.[1] Although the majority gets itself all confused, probable cause *is* at the heart of this case. However, the majority leads itself away from a discussion of the relationship between probable cause and warrantless searches and never does answer the appropriate questions.

I suspect that one of the majority's problems is that it cannot quite bring itself to recognize the limits of the fact situation. The police arrived at the scene of a one-car automobile accident. Defendant was the only person connected with the car who was there when Officer Justus arrived. He was holding two bags, one in each hand. He voluntarily, without any request or compulsion by either of the officers present, put one of the bags on the ground and walked away from it toward the passenger side of the car. Although it is true that Justus thought it was a kind of gun bag, he did not testify that he had any fear, let alone any specific and articulable fact basis for fear, from defendant's activities. Furthermore, and significantly, Justus did not testify that he suspected defendant of violating any part of ORS 166.250 before he lifted the bag and squeezed it. In short, nothing in this record supports a conclusion of probable cause for the officer to believe that defendant was committing a felony or a Class A misdemeanor. Moreover, even if probable cause did exist, there was no basis for the officer to seize and open the bag.

Even assuming that there was a basis for the officer to seize the bag, as he did when he picked it up, the majority does not explain the basis for his opening it. In the circumstances, one would think that, if it was properly seized, it was then in the officer's possession and there was adequate time to get a warrant to search it. It cannot do to argue that the reason that Justus could open the bag is that he did not have sufficient information to get a warrant to search it. There is no basis in the evidence for a warrantless search.

The majority's attempt to distinguish *State v. Bates,* 304 Or 519, 747 P2d 991 (1987), is wholly unpersuasive. I have already pointed out that Justus never claimed to have a "reasonable suspicion that defendant posed an immediate threat of serious physical injury to him or his fellow officer."

---

[1] The majority properly pays no attention to the state's peculiar attempt to uphold what happened here as authorized by ORS 131.625, the stop-and-frisk statute.

100 Or at 696. Moreover, the majority fails to identify what relationship there was between defendant and the officer at the time of the seizure and search. There is nothing in the record that would support a conclusion that defendant had been stopped within the meaning of ORS 131.625 when the bag was seized—or when it was searched. To be sure, the only category into which I can fairly fit the situation is "mere conversation" in the course of an automobile accident investigation.

The majority says that, "[w]hen Justus lifted the bag and squeezed it, he felt the guns" and that "[t]hat gave him probable cause * * * to arrest defendant for the offense of carrying a firearm concealed upon the person without a license * * * and to search the bag incident to that arrest." 100 Or App at 696. Leaving aside the question of whether there was probable cause, I am unpersuaded that defendant could lawfully be charged with violating *former* ORS 166.250(1)(b); a better case could be made for his having violated *former* ORS 166.250(1)(a). I am not persuaded that carrying a zippered bag with a gun in it is equivalent to carrying a firearm "upon" oneself. The majority needs to clarify just what offense the officers had probable cause to believe that defendant had committed.

Perhaps it is that last matter that needs to be discussed first.

Buttler, Graber and Edmonds, JJ., join in this dissent.