Argued and submitted October 10, 1990, decision of Court of Appeals and judgment
of circuit court affirmed July 23, 1992

# STATE OF OREGON,
*Respondent on Review,*

*v.*

# LEVESTER ANFIELD,
*Petitioner on Review.*

## (CC 87-08-34634; CA A50077; SC S37091)

836 P2d 1337

Ingrid A. MacFarlane, Deputy Public Defender, Salem, argued the cause for petitioner on review. With her on the petition was Sally L. Avera, Public Defender, Salem.

Jas. J. Adams, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the response were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Carson, Chief Justice,** and Peterson,*** Gillette, Van Hoomissen, Fadeley, and Unis, Justices.

GILLETTE, J.

Unis, J., concurred and filed an opinion.

---

** Carson, C. J., Chief Justice when case decided.
*** Peterson, J., Chief Justice when case argued.

## GILLETTE, J.

In this criminal case, police discovered heroin on defendant's person following his arrest for the unlawful possession of a firearm. Defendant moved in the trial court to suppress the heroin, claiming that his arrest was unlawful under Oregon statutory law and that he had been subjected to searches and seizures that were illegal under Oregon statutory law, as well as under the state and federal constitutions. The trial court denied defendant's motion, and defendant was convicted of two counts of possession of a controlled substance. A divided Court of Appeals, sitting *in banc*, affirmed (5-4), *State v. Anfield*, 100 Or App 692, 788 P2d 480 (1990), and we allowed review. We affirm.

The pertinent facts are not in dispute, although their legal significance is. At approximately 3 a.m. on June 8, 1987, Portland Police Officer Justus responded to a report of an accident in which a car had hit a tree. On arrival, Justus saw another officer conversing with defendant. Defendant, who was standing at the rear of the car that had been in the accident, was holding a black bag in one hand and a white plastic bag in the other. Justus asked defendant what happened. Defendant responded that a friend had been driving the car but had left to obtain a tow truck. During this explanation, defendant, who had been holding both bags at arms length, dropped them to the pavement. On completing his explanation, defendant went to the passenger side of the car and began to unload it. Justus thought the black bag looked like a gun bag of a type that was sold at local sporting goods stores and that he had seen at his shooting range. The bag appeared to Justus to contain something "real heavy," because it bent with the weight of its contents while defendant held it. When defendant dropped the bag on the pavement, Justus heard a loud metallic "clunk, like, you know, two metal things crashing into each other when it hit the ground." To Justus, "it sounded like guns * * * like it was metal guns in there."

Because he "was concerned that [the black bag] had guns in it," Justus lifted the bag a few inches off the ground, discovered that it was "really heavy," and felt it. He then squeezed the bag, identifying "the outlines of the guns in there." Finally, Justus unzipped the bag and discovered two

loaded pistols inside. He then arrested defendant for carrying concealed weapons. Incident to the arrest, Justus searched defendant and found in his shirt pocket both a bottle containing pills and a small jar of tar heroin. He further searched defendant and found more tar heroin in his wallet.

The state charged defendant with two counts of possession of a controlled substance, ORS 475.992. In the trial court, defendant moved to suppress the heroin, arguing that Justus had violated defendant's rights under Oregon Constitution Article I, section 9, and the Fourth and Fourteenth Amendments to the Constitution of the United States, when he picked the bag up, felt it, squeezed it, and looked into it. Defendant further argued that Justus also had violated his statutory rights by arresting him because, even if discovery of the guns was permissible, the guns were not "upon his person" and, therefore, he had not violated the pertinent statute. The trial court denied the motion and convicted defendant of the two counts for possession of a controlled substance.

Defendant appealed to the Court of Appeals, which affirmed. *State v. Anfield, supra.* The court held that Justus' search of the bag was proper under *State v. Bates*, 304 Or 519, 747 P2d 991 (1987), because "the specific and articulable facts do support the officer's reasonable suspicion that defendant posed an immediate threat of serious physical injury to him or his fellow officer and allowed him to take reasonable steps to protect himself and the other officer." *State v. Anfield, supra*, 100 Or App at 696. The court further held that, once Justus felt the outline of guns in the bag, he had probable cause to arrest defendant for the unlawful possession of a weapon.[1] Finally, the court held that, once Justus had arrested defendant on the weapons charge, the search that led to discovery of the illegal drugs was permissible as incident to that arrest.

The dissent argued that Justus had no authority to lift and squeeze the bag, let alone open it. The record, the

---

[1] ORS 131.005(11) defines probable cause to arrest:

" 'Probable cause' means that there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it."

dissent maintained, did not justify application of the officer-safety rule of *State v. Bates, supra. State v. Anfield, supra,* 100 Or App at 698 (Joseph, C. J., dissenting). Finally, the dissent would have held that, regardless of the merits of the search of the bag, Justus lacked probable cause to arrest defendant for the unlawful possession of a weapon under the unlawful possession of a weapon statute, ORS 166.250(1)(b) (1987), because the guns carried in the bag were not "upon" defendant, as that statute requires. *Id.* at 699.

■ We approach this case using our methodology of first examining the statutory issues and then addressing the constitutional issues that remain after the statutory questions have been answered. *See State v. Kennedy,* 295 Or 260, 666 P2d 1316 (1983) (setting forth methodology). Because the statutory issue concerning whether the guns were "upon the person" of defendant would be dispositive if decided in defendant's favor, we address that issue first.

■ Defendant contends that, even if Justus' actions with respect to the bag were constitutionally permissible — an issue that we discuss *post* — Justus had no probable cause to arrest him because it was legally impossible for him to be violating the concealed firearm statute, ORS 166.250(1)(b) (1987).[2] At the time of defendant's arrest, ORS 166.250(1)(b) provided:

> "[A] person commits the crime of unlawful possession of a firearm if the person knowingly:
>
> "* * * * *
>
> "(b) Carries any firearm concealed upon the person, without having a license to carry such firearm as provided in ORS 166.290[.]"

Defendant interprets the statute to prohibit carrying a firearm "on, not near a person's body." Defendant argues that "[t]emporarily holding a gun bag in one's hand and not on one's person cannot satisfy the 'upon' language of the statute." As noted, the dissent in the Court of Appeals agreed with this analysis.

---

[2] The statute since has been amended to reference further a licensing procedure and has been renumbered as ORS 166.250(1)(a). Or Laws 1989, ch 839, § 13.

We disagree. While we have found no Oregon case in point, we agree with the analysis of other courts that have concluded that the language, "upon the person," includes purses, handbags, bags, and their contents, when they are carried in the manner that defendant was carrying this bag. *See People v. Pugach*, 15 NY2d 65, 255 NYS2d 833, 204 NE2d 176 (1964), *cert den* 380 US 936 (1965) (holding that "upon the person" included a loaded firearm concealed in a briefcase carried by the defendant); *People v. Dunn*, 61 Cal App 3d Supp 12, 132 Cal Rptr 921 (1976) (holding that "upon the person" included a handgun concealed in a suitcase carried by the defendant). The pertinent consideration is whether defendant carried the bag, not the fact that it was a bag or how long defendant carried it. Justus saw defendant carrying a bag. While defendant held the bag, it and, necessarily, its contents were "upon the person" of defendant. Justus later learned that the bag contained weapons. Justus, therefore, had probable cause, as defined by ORS 131.005(11), to believe that defendant had violated ORS 166.250(1)(b) (1987). Defendant's arrest on that charge was lawful, if the circumstances leading to the arrest were lawful. We turn next to the questions related to that issue.

■ Defendant argues that Justus lacked statutory authority to investigate the traffic accident and, therefore, that Justus did not lawfully encounter defendant. "Nowhere," defendant asserts, "is there an affirmative duty legislatively imposed that requires police to investigate accidents."

Defendant asks too much of the positive law. It is enough that the law *permits* the activity in question, as here it unquestionably does. ORS 810.410(4) provides, in part:

> "When a police officer at the scene of a traffic accident has reasonable grounds, *based upon the police officer's personal investigation*, to believe that a person involved in the accident has committed a traffic offense in connection with the accident, the police officer may issue to the person a citation for that offense."

(Emphasis supplied.) ORS 810.460 further provides:

> "(1) A police officer shall submit a written report to the division whenever the officer does any of the following:

*"(a) Investigates a vehicle accident which ORS 811.725 or 822.600 requires to be reported.*

*"(b) Prepares a written report of an accident investigated* at the time and place of the accident or by field interviews with the participants or witnesses.

"(2) A police officer shall submit a report required by this section to the division within 10 days of the investigation or preparation of the written report.

"(3) Police reports submitted to the division under this section are subject to release or use as provided under ORS 802.220 and 802.240."

(Emphasis supplied.) *See also State v. Holmes*, 311 Or 400, 404-06, 813 P2d 28 (1991) (discussing authority of police officers at scene of traffic accident under several statutes). Police officers have authority to investigate traffic accidents. It follows that Justus' encounter with defendant at the scene of the accident was lawful. We turn to defendant's constitutional arguments.

There arguably were four separate acts in connection with Justus' contact with the black bag that defendant claimed had constitutional import under Article I, section 9, of the Oregon Constitution:[3] lifting the bag, squeezing the bag, feeling its contents through the side of the bag, and opening the bag. With respect to the first two of these acts, *viz.*, lifting the bag and squeezing the bag, defendant argued to the Court of Appeals and to this court that such actions were an impermissible "seizure" under the state and federal constitutions. Read generously, defendant's arguments in the lower courts may be said to claim further that picking up and briefly feeling the bag from the outside constituted a "search."

 As our summary of the views expressed by the various opinions in the Court of Appeals indicates, that court was divided on whether and when a "search" or "seizure" had

---

[3] Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

occurred in this case. In our view, however, such a disagreement is beside the point. Justus already had probable cause to believe that the bag contained guns before he picked it up. The type of bag, the bag's obvious weight, and the sound made when the bag was dropped gave Justus probable cause to believe that the bag contained concealed weapons and to arrest defendant on the weapons charges, *i.e.*, the officer subjectively believed, and there was an objective basis for him to believe, that he had just seen defendant carrying a concealed weapon. The arrest of defendant on the concealed firearm charge was proper. Assuming, then, that some or all of the acts of lifting, squeezing, feeling, and opening the bag constituted a search, such a search was justified as a search incident to defendant's arrest. (The fact that the search *preceded* the formal arrest by a few moments did not keep the search from being *incident* to the arrest, so long as there was probable cause for the arrest and the initial search was related to the reason for the arrest. *State v. Elk*, 249 Or 614, 621-22, 439 P2d 1011 (1968); *see also State v. Caraher*, 293 Or 741, 759, 653 P2d 942 (1982) (citing *Elk* with apparent approval).[4]

■■ Incident to defendant's arrest, Justus also had the authority to search defendant for other weapons. *State v. Owens*, 302 Or 196, 202, 729 P2d 524 (1986). During the search of defendant, Justus discovered a bottle of pills and then a jar of tar heroin, thus giving Justus the further authority to seize the heroin, *State v. Westlund*, 302 Or 225, 231, 729 P2d 541 (1986), and search defendant for other controlled substances. *State v. Owens, supra.* This is a routine example of escalating probable cause, with each permissible act of the officer leading to the discovery of something that justified the officer's next act. The officer's actions that led to the discovery and seizure of the drugs for whose possession defendant was convicted did not violate Article I, section 9.[5]

---

[4] Defendant does not argue that, if there was probable cause to arrest him, the ensuing search in any way exceeded the permissible scope of a search incident to arrest. *See State v. Caraher*, 293 Or 741, 653 P2d 942 (1982) (discussing permissible scope of search incident to arrest).

[5] Because Justus' actions with respect to the bag are justified on the grounds stated, we need not decide in this case whether the officer's actions also were justified, as the trial court and the Court of Appeals majority held, under *State v. Bates*, 304 Or 519, 747 P2d 991 (1987) (officer safety).

Although he also cites the Fourth and Fourteenth Amendments to the Constitution of the United States,[6] defendant makes no separate argument under them. The case would not be decided differently under the federal constitution. The federal constitutional standard for probable cause to arrest is less stringent than Oregon's statutory standard of "more probable than not." If the officer had probable cause to arrest defendant under Oregon law, *a fortiori* he had probable cause under the federal standard. Once defendant was arrested, the search of defendant's person was permissible, under federal law, as a search incident to defendant's arrest. *See United States v. Robinson*, 414 US 218, 94 S Ct 467, 38 L Ed 2d 427 (1973); *Gustafson v. Florida*, 414 US 260, 94 S Ct 488, 38 L Ed 2d 456 (1973) (complete search of arrested person following valid arrest not a violation of Fourth Amendment).[7]

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

**UNIS, J.,** concurring.

I join the opinion but write separately concerning defendant's contention that the police officer did not have statutory authority to be present at the scene of the traffic accident and, therefore, that the officer did not lawfully encounter defendant.

The court correctly demonstrates that police officers are authorized by the Oregon legislature, a politically

---

[6] The Fourth Amendment to the Constitution of the United States provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The provisions of the Fourth Amendment are made applicable to the several states under the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, which provides:

"No State shall * * * deprive any person of life, liberty, or property, without due process of law * * *."

[7] Defendant makes no separate argument under the federal constitution concerning the permissible *scope* of any search incident to his arrest. We therefore do not address that subject.

accountable lawmaker,[1] to investigate traffic accidents. The court rejects, therefore, defendant's argument that the officer did not lawfully encounter defendant at the scene of the accident. I agree.[2] I believe, however, that there is an additional reason why the encounter was lawful. In my view, police officers do not need authorization from a politically accountable lawmaker to stop at the scene of a motor vehicle accident on a public highway or in a public place. Nor, in my view, do police officers need authorization from a politically accountable lawmaker to *merely* ask a question (*e.g.*, to ask "what happened?") of a person present at the scene of such a traffic accident, without being called on to articulate a certain level of suspicion in justification for such conduct. Such a

---

[1]

"The phrase 'politically accountable lawmaker' is taken from *Nelson v. Lane County*, [304 Or 97, 105, 743 P2d 692 (1987)], where this court stated: 'Authority for administrative searches may be, and often is, provided by politically accountable lawmakers.' *See also State v. Atkinson*, 298 Or 1, 6, 688 P2d 832 (1984) (phrase 'politically accountable officials' used).

"Potential sources of proper authorization by politically accountable lawmakers would include, for example, a statute enacted by the Oregon Legislature or by the electorate through the initiative or referendum process, a regulation based on a statute, a city or county charter provision, a city or county ordinance, or a policy or procedure promulgated pursuant to authority."

*State v. Holmes*, 311 Or 400, 404 n 4, 813 P2d 28 (1991).

[2] This case arose before the Legislative Assembly enacted into law ORS 133.033 and is considered apart from that statute. ORS 133.033 provides:

"(1) Except as otherwise expressly prohibited by law, any peace officer of this state, as defined in ORS 133.005, is authorized to perform community caretaking functions.

"(2) As used in this section, 'community caretaking functions' means any lawful acts that are inherent in the duty of the peace officer to serve and protect the public. 'Community caretaking functions' includes, but is not limited to:

"(a) The right to enter or remain upon the premises of another if it reasonably appears to be necessary to:

"(A) Prevent serious harm to any person or property;

"(B) Render aid to injured or ill persons; or

"(C) Locate missing persons.

"(b) The right to stop or redirect traffic or aid motorists or other persons when such action reasonably appears to be necessary to:

"(A) Prevent serious harm to any person or property;

"(B) Render aid to injured or ill persons; or

"(C) Locate missing persons.

"(3) Nothing contained in this section shall be construed to limit the authority of a peace officer that is inherent in the office or that is granted by any other provision of law."

scenario illustrates "a police-citizen encounter without any restraint of liberty (*e.g.*, mere conversation, a non-coercive encounter)" and does not implicate Article I, section 9, of the Oregon Constitution. *State v. Holmes*, 311 Or 400, 407, 813 P2d 28 (1991) (citing *State v. Warner*, 284 Or 147, 161, 585 P2d 681 (1978)).