Argued and submitted June 12, 2001, affirmed February 20, 2002

# STATE OF OREGON,
*Respondent,*

*v.*

# KIRSTEN FINLAY,
*Appellant.*

## 991152425; A111106

42 P3d 326

Nikolaus Albrecht argued the cause and filed the brief for appellant.

Douglas F. Zier, Assistant Attorney General, argued the cause and filed the brief for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

■ Defendant appeals from a judgment of conviction for unlawful possession of a firearm. ORS 166.250(1)(a).[1] She assigns error to the denial of her motion for judgment of acquittal.[2] We state the facts in the light most favorable to the state to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994). We affirm.

In October 1999, defendant went to the Horizon Air ticket counter at Portland International Airport to check in for her flight. She had three pieces of luggage and a large oversized pillow with her. The piece of luggage at issue was a large suitcase with a strap and rollers that weighed approximately 150 pounds. Defendant told the ticket agent, Kessel, that she had luggage to check. The computer at the airline counter then randomly selected defendant's luggage to be scanned through a CTX machine, a powerful x-ray machine. There is conflicting testimony as to who carried the suitcase to the CTX machine. Kessel testified that she had defendant carry her luggage to the machine and that defendant placed the luggage on the conveyor belt. Defendant, on the other hand, testified that Kessel carried the suitcase at issue from the ticket counter to the machine. Once at the machine and before scanning defendant's suitcase, defendant was asked if she had anything in her suitcase she would like to tell the ticket agent about. Defendant answered that she did not.

When the suitcase was scanned, the CTX operator saw an item that appeared to be a gun. Port of Portland Police Officer McCarver asked defendant if she had a gun in her suitcase. Defendant admitted that she did and consented

---

[1] ORS 166.250 provides, in part:

"(1) Except as otherwise provided in this section, ORS 166.260, 166.270, 166.274, 166.280, 166.291, 166.292 or 166.410 to 166.470, a person commits the crime of unlawful possession of a firearm if the person knowingly:

"(a) Carries any firearm concealed upon the person[.]"

[2] Defendant also raises, for the first time on appeal, a federal preemption argument. We do not address that unpreserved argument. *State v. Hitz*, 307 Or 183, 766 P2d 373 (1988).

to a search of her suitcase. In the ensuing search, McCarver found a boxed, unloaded gun. Ultimately, defendant was charged with, and convicted of, unlawful possession of a firearm.

■ Defendant's first assignment of error alleges that there was no evidence presented at trial that defendant ever carried her suitcase between her home and the CTX machine. *See* ORS 166.250(1)(a) (person commits crime of unlawful possession of a firearm if, *inter alia*, he or she knowingly carries a firearm concealed upon the person). We disagree. At trial, when defendant moved for a judgment of acquittal, the trial court denied the motion, suggesting that there was evidence from which the jury could infer that defendant carried the suitcase from the check-in counter to the CTX machine. Viewing the facts in the light most favorable to the state, we agree that the record contains evidence that defendant, at a ticket agent's direction, carried the suitcase from the ticket counter to the CTX machine. Accordingly, we reject defendant's first assignment of error.[3]

Defendant's second assignment of error asserts that, even if there is sufficient evidence that she carried or moved the suitcase, she did not carry the suitcase "upon her person" in the legal sense as that term was construed in *State v. Anfield*, 313 Or 554, 836 P2d 1337 (1992) (interpreting ORS 166.250(1)(a)). We disagree.

In *Anfield*, the arresting officer observed the defendant holding a black bag in one hand and a white plastic bag in the other hand and "thought [that] the black bag looked like a gun bag of a type that was sold at local sporting goods stores and that he had seen at his shooting range." *Id.* at 556. The defendant, who had been holding both bags at arm's length, dropped them to the pavement. The officer heard a loud metallic clunk come from the black bag that sounded like two metal guns banging together. Consequently, the officer lifted the black bag a few inches off the ground, squeezed it, and identified the outlines of the guns inside the bag. Opening the bag, the officer discovered two loaded pistols and

---

[3] Defendant did not argue that she was coerced or forced to carry the suitcase. ORS 166.250(1) requires defendant to carry the firearm knowingly. Defendant does not dispute that she knew the suitcase contained the firearm.

arrested the defendant for unlawful possession of a firearm. *Id.* at 556-57.

In his prosecution for possession of a controlled substance,[4] the defendant moved to suppress the evidence of the controlled substance on the ground that his initial arrest was unlawful because the guns were not "upon his person." The court disagreed:

> "While we have found no Oregon case in point, we agree with the analysis of other courts that have concluded that the language, 'upon the person,' includes purses, handbags, bags, and their contents, when they are carried in the manner that defendant was carrying this bag. *See People v. Pugach*, 15 NY2d 65, 255 NYS2d 833, 204 NE2d 176 (1964), *cert den* 380 US 936 (1965) (holding that 'upon the person' included a loaded firearm concealed in a briefcase carried by the defendant); *People v. Dunn*, 61 Cal App 3d Supp 12, 132 Cal Rptr 921 (1976) (holding that 'upon the person' included a handgun concealed in a suitcase carried by the defendant). The pertinent consideration is whether defendant carried the bag, not the fact that it was a bag or how long defendant carried it. [The officer] saw defendant carrying a bag. While defendant held the bag, it and, necessarily, its contents were 'upon the person' of defendant." *Id.* at 559.

Here, defendant focuses on the "in the manner that defendant was carrying this bag" language from *Anfield* and argues that the court in *Anfield* recognized the significance of the different ways of carrying a firearm. The dispositive issue, thus, is whether the evidence that defendant physically moved her suitcase from the check-in counter to the CTX machine is sufficient to establish "carrying" as contemplated by ORS 166.250(1)(a) and *Anfield*.

Defendant argues that, because she had the gun inside a very large and heavy suitcase to be checked into the hold of the airplane, the manner in which she carried her bag is substantially different from the manner in which the defendant carried his bag in *Anfield*. In particular, defendant argues that the firearm here—unlike a firearm contained in

---

[4] The controlled substance was discovered following the defendant's arrest for unlawful possession of a firearm.

a purse, briefcase or small suitcase—was not readily accessible. That absence of accessibility, defendant argues, distinguishes this case from *Anfield*. We disagree.

■   There is no requirement under ORS 166.250(1)(a) that the firearm be readily accessible.[5] *See State v. Williams*, 161 Or App 111, 124, 984 P2d 312 (1999) (Edmonds, P. J., concurring) ("ORS 166.250(1)(a) and (b) focus on *places* of concealment and not whether there is easy access to an object.") (emphasis in original). Rather, while ORS 166.250 does contain the term "readily accessible," that language is found in ORS 166.250(1)(b),[6] which applies to handguns possessed inside a vehicle. No similar language is found in ORS 166.250(1)(a), and we cannot insert language into that provision that the legislature has chosen to exclude. ORS 174.010.

■   *Anfield* establishes that "[t]he pertinent consideration is whether defendant *carried the bag, not the fact that it was a bag or how long defendant carried it*." 313 Or at 559 (emphasis added). Although the defendant in *Anfield* may have been carrying a smaller and lighter bag than defendant here, in both cases the defendant *carried* a bag with a firearm concealed inside. *Anfield* and the authorities on which it relied all involved a defendant carrying a firearm inside of a bag, briefcase or suitcase. Each of those courts held that the contents of those bags were "upon the person." The particular characteristics of the bag here do not obviate the fact that defendant carried the bag and that the bag contained a firearm. Thus, defendant's conduct falls squarely within the interpretation of ORS 166.250(1)(a) announced in *Anfield*,

---

[5] ORS 166.210(2) defines "firearm" as "a weapon, by whatever name known, which is designed to expel a projectile by the action of powder and which is *readily capable* of use as a weapon." (Emphasis added.) *See also State v. Goltz*, 169 Or App 619, 10 P3d 955 (2000), *rev den* 331 Or 583 (2001). Defendant, however, does not argue that the gun here, due to its location in the suitcase, was not "readily capable of use as a weapon."

[6] ORS 166.250 provides, in part:

"(1) * * * a person commits the crime of unlawful possession of a firearm if the person knowingly:

"* * * * *

"(b) Possesses a handgun that is concealed *and readily accessible* to the person within any vehicle[.]" (Emphasis added.)

and the trial court did not err in denying defendant's motion for a judgment of acquittal.

Affirmed.