Filed 5/9/16

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PELPLE, | ) | |
| | ) | |
| Plaintiff and Appellant, | ) | |
| | ) | S224599 |
| v. | ) | |
| | ) | Ct.App. 2/5 B255894 |
| STEVEN WADE, | ) | |
| | ) | Los Angeles County |
| Defendant and Respondent. | ) | Super. Ct. No. BA421048 |
| _____ | ) | |

Is a person wearing a backpack that contains a loaded revolver carrying a loaded firearm on the person? We conclude the answer is yes.

## I. FACTS AND PROCEDURAL HISTORY

The Court of Appeal opinion authored by Justice Kriegler summarized the facts and procedural history in the superior court: "Defendant Steven Wade was held to answer on a charge of carrying a loaded firearm on his person (Pen. Code, § 25850, subd. (a)).[1] Preliminary hearing testimony established that defendant was wearing a backpack containing a loaded revolver while being pursued by a police officer. The trial court granted defendant's section 995 motion to dismiss, finding that defendant did not carry the firearm on his person under the reasoning in *People v. Pellecer* (2013) 215 Cal.App.4th 508 (*Pellecer*), which held that a knife contained in a backpack is not carried ' "on the person." ' "

---

**1** All statutory references are to the Penal Code.

1

The People appealed. Declining to apply *Pellecer*'s reasoning, the Court of Appeal reversed. It held that a person "wearing a backpack containing a firearm carries the firearm on his or her person."

We granted defendant's petition for review to resolve the apparent conflict between the Court of Appeal opinion of this case and *Pellecer*, *supra*, 215 Cal.App.4th 508.

## II. DISCUSSION

Section 25850, subdivision (a), provides: "A person is guilty of carrying a loaded firearm when the person *carries a loaded firearm on the person* or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory." (Italics added.)

Section 25850 is derived from former section 12031, subdivision (a), enacted in 1967, which made "every person who carries a loaded firearm on his person" guilty of a misdemeanor. (Stats. 1967, ch. 960, § 1, p. 2459.) As the Court of Appeal in this case explained, "Section 25850, subdivision (a), is the successor statute to former section 12031, subdivision (a)(1), which was repealed in 2010 as part of the Deadly Weapons Recodification Act of 2010 (the Act). (§ 16000 et seq.) The Act is not intended to substantially change the law relating to deadly weapons and 'is intended to be entirely nonsubstantive in effect.' (§ 16005.) Provisions of the Act are intended to be restatements and continuation of prior statutes in the absence of the appearance of a contrary legislative intent. (§ 16010.) 'A judicial decision interpreting a previously existing provision is relevant in interpreting any provision of' the Act, although 'the Legislature has not evaluated the correctness of any judicial decision interpreting a provision affected by the act' and it 'is not intended to, and does not, reflect any assessment of any

2

judicial decision interpreting any provision affected by the act.' (§ 16020, subds. (a)-(c).)" (Fn. omitted.)

Defendant concedes that he *carried* the loaded firearm, but he argues that, because it was in his backpack, it was not *on his person*. We disagree. The backpack was on his person and, accordingly, anything inside that backpack was also on his person. Case law strongly supports this conclusion.

Two California cases have considered similar questions: *Pellecer*, *supra*, 215 Cal.App.4th 508, and *People v. Dunn* (1976) 61 Cal.App.3d Supp. 12 (*Dunn*). In *Dunn*, the defendant had a firearm in his suitcase at an airport. He was convicted of carrying a concealed firearm "upon his person" under former section 12025, subdivision (b) (now § 25400, subd. (a)(2)). Because the firearm was in a suitcase, he contended it was not "upon his person." The court disagreed. Citing the New York Court of Appeals decision in *People v. Pugach* (1964) 204 N.E.2d 176 (*Pugach*), the court held that "a handgun concealed in a suitcase and carried by appellant is sufficiently 'upon his person' to constitute a violation of section 12025." (*Dunn*, at p. Supp.14.) *Pellecer*, which we will discuss further below, reached a contrary conclusion regarding knives.

Cases from other states with similar statutory language are similar to *Dunn*, *supra*, 61 Cal.App.3d Supp. 12. Indeed, cases postdating *Dunn* cite that case with approval. Defendant argues that these cases are not persuasive because they did not consider the intent of the *California* Legislature. It is true that the out-of-state decisions do not specifically consider California legislative intent. But they have persuasive value. "In resolving questions of statutory construction, the decisions of other jurisdictions interpreting similarly worded statutes, although not controlling, can provide valuable insight." (*In re Joyner* (1989) 48 Cal.3d 487, 492.)

3

*Pugach*, *supra*, 204 N.E.2d 176, concerned the legality of a frisk leading to the discovery of a concealed firearm. To determine whether the frisk was lawful, the court had to consider whether the defendant had committed the crime of carrying a firearm " 'concealed upon his person.' " (*Id*. at p. 178.) The defendant had carried a briefcase containing a loaded gun. The New York Court of Appeals concluded that the "[t]he loaded firearm concealed in the brief case carried in the hands of the defendant was in the language of the statute 'concealed upon his person' . . . ." (*Ibid*.)

In *State v. Anfield* (Or. 1992) 836 P.2d 1337, the defendant carried a black bag containing two loaded pistols. In resolving a search and seizure question, the Oregon Supreme Court held that the defendant had violated a statute proscribing the carrying of a " 'firearm concealed upon the person.' " (*Id*. at p. 1340.) Citing *Dunn*, *supra*, 61 Cal.App.3d Supp. 12, and *Pugach*, *supra*, 204 N.E.2d 176, the court "agree[d] with the analysis of other courts that have concluded that the language, 'upon the person,' includes purses, handbags, bags, and their contents, when they are carried in the manner that defendant was carrying this bag." (*Anfield*, at p. 1340.) It concluded that "[w]hile defendant held the bag, it and, necessarily, its contents were 'upon the person' of defendant." (*Ibid*.)

Similarly, in *State v. Finlay* (Or.Ct.App. 2002) 42 P.3d 326, the defendant carried a firearm (this time unloaded) in a suitcase at an airport. Citing *State v. Anfield*, *supra*, 836 P.2d 1337, as well as *Dunn*, *supra*, 61 Cal.App.3d Supp. 12, and *Pugach*, *supra*, 204 N.E.2d 176, the appellate court held that the defendant had carried a firearm concealed " 'upon the person.' " (*Finlay*, at pp. 328-329.)

A case from Alaska contains the most detailed analysis. (*DeNardo v. State* (Alaska Ct.App. 1991) 819 P.2d 903 (*DeNardo*).) In *DeNardo*, the defendant carried an 11-inch-long knife in a briefcase. The appellate court affirmed his conviction of possessing a deadly weapon that was "concealed on the person." It

4

cited "[c]ase law from around the country [that] supports the proposition that a person who carries a deadly weapon in a purse, a briefcase, or even a paper bag commits the offense of carrying a concealed weapon." (*Id*. at p. 905.) It recognized that some of the cases it cited came from states with broader statutory language than " 'on the person,' " such as " 'about the person.' " (*Id*. at p. 906.) Citing *Dunn*, *supra*, 61 Cal.App.3d Supp. 12, and *Pugach*, *supra*, 204 N.E.2d 176, it "conclude[d], however, that the phrase 'on the person' is broad enough, without the additional word 'about,' to encompass weapons concealed either in clothing or in purses, briefcases, or other hand-carried containers." (*DeNardo,* at p. 906.)

*DeNardo* recognized the general rule that "when there is a question regarding the construction of a criminal statute, the statute must be construed in favor of the defendant and against the government." (*DeNardo*, *supra*, 819 P.2d at p. 907.) But it found the rule did not dictate a contrary result. "[T]his rule of lenity or strict construction comes into play only when, after employing normal methods of statutory construction, the legislature's intent cannot be ascertained or remains ambiguous. [Citations.] We have concluded that the legislature's intent on this issue can be ascertained." (*Id*. at pp. 907-908.) Accordingly, it held that the "act of carrying a long-bladed knife in a briefcase constituted the concealment of a dangerous weapon 'on his person' . . . ." (*Id*. at p. 908.)

The only out-of-state case defendant cites in support of his position is distinguishable. In *State v. Humphrey* (Okl.Crim.App. 1980) 620 P.2d 408, 409, the defendant was convicted of carrying a pistol "on his person." The facts showed that as the defendant started to sit on a couch in the presence of police officers, the "officers observed a .45 caliber automatic pistol lying on the couch where the defendant was about to sit. The defendant was never seen carrying the pistol on his person . . . ." (*Ibid*.) Contrasting Oklahoma's statutory language " 'on his person' " with broader language used in some states such as " 'about' "

or " 'on or about the person,' " the appellate court found these facts insufficient to support a finding that the pistol was "on his person." (*Id*. at p. 410.) Those facts, however, are entirely different than those here.

Defendant argues that *Dunn*, *supra*, 61 Cal.App.3d Supp. 12, which concerned *concealed* firearms, does not help interpret section 25850, which concerns *loaded* firearms. But no reason appears to believe the Legislature intended a different interpretation of "on the person" (or the equivalent "upon the person") depending on whether the firearm was concealed or loaded. Arguing to the contrary, defendant cites legislative history leading to former section 12025's enactment that, he asserts, shows the Legislature intended a narrow interpretation of when a loaded firearm is "on the person." Specifically, he cites letters and other documents by individual persons, including two legislators, one of them the bill's author, as showing that a narrow interpretation was intended. He argues the Legislature intended to prohibit only the carrying of loaded firearms that are "in the open, visible to the public." Some of the documents he cites suggest that the open display of loaded firearms was a major concern to the bill's supporters, but they do not suggest a legislative intent to *limit* the statute to that situation. In any event, we need not consider these individual statements in detail. "[T]he statements of an individual legislator, including the author of a bill, are generally not considered in construing a statute, as the court's task is to ascertain the intent of the Legislature as a whole in adopting a piece of legislation." (*Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1062.)

In this case, a far more reliable indication of legislative intent exists than individual statements. The Legislature as a whole has spoken. Former section 12031 was part of an act that the Legislature declared to be urgency legislation to become effective immediately. The Legislature declared the following facts to constitute the necessity for such immediate effect: "The State of California has

6

witnessed, in recent years, the increasing incidence of organized groups and individuals publicly arming themselves for purposes inimical to the peace and safety of the people of California. [¶] Existing laws are not adequate to protect the people of this state from either the use of such weapons or from violent incidents arising from the mere presence of such armed individuals in public places. Therefore, in order to prevent the potentially tragic consequences of such activities, it is imperative that this statute take effect immediately." (Stats. 1967, ch. 960, § 6, pp. 2462-2463; see *People v. Zonver* (1982) 132 Cal.App.3d Supp. 1, 5.)

Nothing in this broad statement of concern suggests a legislative intent that the statute be narrowly applied. Instead, we believe the statute should be fairly applied consistent with the Legislature's concern with the threat to public safety from those with control over and ready access to loaded guns in public. We agree with the Court of Appeal in this case "that defendant's immediate access to the revolver within the backpack he wore created the type of clear threat to the general public . . . that is prohibited by section 25850, subdivision (a)."

As did the court in *State v. Humphrey*, *supra*, 620 P.2d 408, defendant contrasts the statutory language "on the person" with the broader language "on or about" that the Legislature has also used in other situations. (See *Pellecer*, *supra*, 215 Cal.App.4th at p. 517 [making a similar argument].) He cites as an example section 374.4, subdivision (c), which uses the "on or about" language in defining " 'litter.' " We do not doubt that the phrase "on or about" is broader than "on," and certainly a firearm in a backpack the person is wearing is on or about the person. But this observation provides no reason to find the firearm in this case was not also on the person.

The *DeNardo* court found support for its interpretation in a definition of the phrase "on the person" in Black's Law Dictionary. (*DeNardo*, *supra*, 819 P.2d at

7

pp. 905-906.)  Defendant cites that same definition to support *his* position.  (See *Pellecer*, *supra*, 215 Cal.App.4th at p. 513 [citing the same definition].)  The sixth edition of that dictionary provides this definition:  "In common parlance, when it is said that someone has an article on his person, it means that it is either in contact with his person or is carried in his clothing."  (Black's Law Dict. (6th ed. 1990) p. 1089, col. 2.)  (Later editions of the dictionary do not contain a definition of "on the person.")  This definition is not conclusive but, if anything, it supports our interpretation.  To adapt to this case the trial court's discussion in *DeNardo* (which the appellate court endorsed), the backpack — and, by extension, the loaded revolver contained therein — "was in immediate contact with" defendant's person, and thus was on his person within the dictionary's definition.  (*DeNardo*, at p. 905.)

Noting that section 25850's language requires that the firearm both be carried *and* be on the person, defendant argues that interpreting "on the person" to include any time the firearm is carried would render that phrase meaningless.  He cites the rule of statutory construction that "[c]ourts should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage."  (*Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 22; see *Pellecer*, *supra*, 215 Cal.App.4th at p. 513 [making a similar argument].)  We disagree that this means we must interpret the language as narrowly as does defendant.  Some states employ even broader language such as " 'carry a concealed firearm on or about' " the person.  (E.g., *Rogers v. State* (Fla.Dist.Ct.App. 1976) 336 So.2d 1233, 1234, fn. 2.)  Whatever conceptual difficulties there may be in envisaging when something can be carried that is not *on* the person are far less than the difficulties in envisaging when something can be carried that is not at least *on or about* the person.  But defendant concedes that he at least carried the firearm on or about his person.  In context, the phrase "on the person" has an independent meaning even

8

without defendant's narrow interpretation. Section 25850, subdivision (a), makes a person guilty of carrying a loaded firearm when the person carries the firearm "on the person *or* in a vehicle." (Italics added.) The Legislature might simply have used the phrase "on the person" to distinguish one way to violate the section from the other way — carrying the loaded firearm in a vehicle.

Defendant agrees that carrying a loaded firearm in clothing would violate section 25850, but he distinguishes a gun in clothing from a gun in a container. The distinction is untenable. It would require, for example that we treat differently a gun in a zippered pocket of a pair of cargo pants — which would violate the statute — from a gun in a fanny pack tied around the waist — which would not violate the statute — even though, from the perspective of easy access, the gun at the waist might be closer at hand than the gun in the knee pocket of the cargo pants. Moreover, as noted, section 25850, subdivision (a), proscribes carrying a loaded firearm "on the person *or* in a vehicle." (Italics added.) It would be strange to conclude that having a loaded firearm in a backpack a person is wearing does not violate the statute, but that as soon as the person gets into a car, removes the backpack, and places it on the passenger seat, the person does violate the statute. The differing treatment defendant urges would be neither workable nor consistent with the underlying legislative purpose.

The Court of Appeal cited *Muscarello v. United States* (1998) 524 U.S. 125 as supporting its interpretation. In *Muscarello*, the United States Supreme Court interpreted language in a federal statute that refers to " 'carries a firearm,' " but does not contain the language "on the person." (*Id*. at p. 126.) The high court rejected the argument that the statutory language was "limited to the carrying of firearms on the person." (*Ibid*.) Because the federal statute at issue there did not include the phrase "on the person" — and thus was arguably written more broadly than the statute at issue here — we agree with defendant that the case does not

9

help interpret section 25850, and we do not rely on it. But nothing in that case suggests that section 25850 should be interpreted differently than we do.

This brings us to *Pellecer*, *supra*, 215 Cal.App.4th 508. In that case, the defendant was seen "leaning on a closed backpack" that contained three knives. (*Id*. at p. 511.) He was convicted of carrying a dirk or dagger concealed "upon his or her person" under former section 12020, subdivision (a)(4) (now § 21310). The Court of Appeal reversed the conviction, finding that "defendant did not violate the statute because the knives in his backpack were not carried on his person." (*Pellecer,* at p. 511.) It cited several reasons for this conclusion, some of which we have already mentioned.

The *Pellecer* court criticized *Dunn*'s reliance on *Pugach*, *supra*, 204 N.E.2d 176. (See *Dunn*, *supra*, 61 Cal.App.3d at p. Supp. 14.) It noted that *Pugach* was a search and seizure case and argued that "[t]o the extent *Pugach* may be read as reflecting a determination of the intent of the New York Legislature in enacting the cited statute containing the phrase 'concealed upon his person,' the same intent cannot be automatically imputed to the California Legislature." (*Pellecer*, *supra*, 215 Cal.App.4th at pp. 516-517.) But the *Pugach* court had to interpret the penal statute in order to resolve the search and seizure issue. Additionally, as the Court of Appeal in this case noted, "the *Dunn* court never suggested that *Pugach* described California's legislative intent. The interpretation of a similar statute by a highly regarded court of another state was persuasive authority that assisted in interpreting California law."

The *Pellecer* court also cited two reasons for its conclusion that are specific to knives and thus are irrelevant to guns. First, it examined the legislative history behind a bill introduced in 1997 that would have exempted from the prohibition knives carried in a backpack or other specified container. The bill was never enacted, but the *Pellecer* court read the legislative history as indicating the

10

Legislature believed the exemption already existed, and thus the bill was unnecessary. (*Pellecer*, *supra*, 215 Cal.App.4th at pp. 514-515; see Assem. Bill No. 78 (1997-1998 Reg. Sess.).) "Unpassed bills, as evidences of legislative intent, have little value." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1396.) But we need not consider the significance, if any, of the rejected bill, because whatever significance it might have is limited to knives. Second, the court stated that not "outlaw[ing] carrying a dirk or dagger in a backpack is understandable, given the utility of a knife in such lawful pursuits as fishing, hunting, camping, picknicking and the like." (*Pellecer*, at p. 517.) This rationale also does not apply to firearms.

*Pellecer* is also factually distinguishable. There, the defendant was merely leaning on the backpack and thus, arguably, had less immediate control over its contents than defendant had in this case, where he was actually wearing the backpack. *Pellecer*'s facts seem more similar to those of *State v. Humphrey*, *supra*, 620 P.2d 408, where the court found no statutory violation, than to those of this case. For these reasons, we disapprove *People v. Pellecer*, *supra*, 215 Cal.App.4th 508, to the extent its analysis is inconsistent with this opinion, although not necessarily its holding.

Defendant also argues that the rule of lenity compels his narrow interpretation. (See generally *People v. Avery* (2002) 27 Cal.4th 49, 57-58.) We disagree. "The rule of lenity exists to ensure that people have adequate notice of the law's requirements. But the rule applies only when two reasonable interpretations of a penal statute stand in relative equipoise. '[A]lthough true ambiguities are resolved in a defendant's favor, an appellate court should not strain to interpret a penal statute in defendant's favor if it can fairly discern a contrary legislative intent.' (*Id.* at p. 58.) Here, there is no relative equipoise. We can fairly discern the Legislature's intent." (*People ex rel. Green v. Grewal*

11

(2015) 61 Cal.4th 544, 565-566.) As the Court of Appeal noted in rejecting this argument, "Courts of this state and other states that have considered the meaning of similar statutes consistently conclude that a person carrying a concealed firearm in an object such as a suitcase, purse, or bag, carries the weapon concealed on the person." (See also *DeNardo*, *supra*, 819 P.2d at pp. 907-908 [rejecting a similar argument].)

### III. CONCLUSION

We affirm the judgment of the Court of Appeal.

CHIN, J.

WE CONCUR:

CANTIL-SAKAUYE, C. J.
WERDEGAR, J.
CORRIGAN, J.
LIU, J.
CUÉLLAR, J.
KRUGER, J.

12

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Wade

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 234 Cal.App.4th 265
**Rehearing Granted**

_____

**Opinion No.** S224599
**Date Filed:** May 9, 2016

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Clifford Klein

_____

**Counsel:**

Jackie Lacy, District Attorney, Phyllis C. Asayama and Scott D. Collins, Deputy District Attorneys, for Plaintiff and Appellant.

David L. Polsky, under appointment by the Supreme Court, and Jean Ballantine, under appointment by the Court of Appeal, for Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Scott D. Collins
Deputy District Attorney
320 West Temple Street, Suite 540
Los Angeles, CA  90012
(213) 974-5911

David L. Polsky
P.O. Box 118
Ashford, CT  06278
(860) 429-5556