Filed 4/17/13

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE


| | |
|---|---|
| THE PEOPLE, | B238949 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA388585) |
| v. | |
| KEVIN ALEJANDRO PELLECER, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of Los Angeles County. Monica Bachner, Judge. Reversed.

Joy A. Maulitz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Lawrence M. Daniels, Supervising Deputy Attorney General, and William H. Shin, Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant Kevin Pellecer appeals from the judgment entered following a jury trial in which he was convicted of carrying a concealed dirk or dagger on his person in violation of former Penal Code section 12020, subdivision (a)(4).[1] Defendant contends that his conviction is not supported by substantial evidence because the knives he possessed were inside of his backpack, and he was thus not carrying them on his person. He raises related contentions of misinstruction of the jury and vagueness of the statute. We agree that defendant did not violate the statute because the knives in his backpack were not carried on his person. Accordingly, we reverse defendant's conviction.

**BACKGROUND**

At 2:30 a.m. on September 5, 2011, Los Angeles Police Department Officers Reynaldo Masangkay and Carlos Landivar responded to a call about a burglary suspect at Barnsdall Park in Los Angeles. They found defendant crouching in a corner of an enclosed patio in the park. Defendant was leaning on a closed backpack. In response to the officers' orders, defendant approached them. The record does not indicate whether defendant took the backpack with him while complying with the officers' orders. Masangkay unzipped the backpack and found inside it a nylon pouch that contained three identical knives. Masangkay testified that he had previously studied martial arts and recognized the knives as shuriken throwing knives, which could be used offensively or defensively for throwing or stabbing. Each knife was three or four inches long, with one sharp end and a ring on the opposite end. Each knife had an identical ribbon attached to

---

[1] Penal Code section 12020 was repealed, effective January 1, 2012. (Stats. 2010, ch. 711, § 4.) The current equivalent statute is Penal Code section 21310, which provides, "Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who carries concealed upon the person any dirk or dagger is punishable by imprisonment in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170." (Undesignated statutory references are to the Penal Code.) In 2011, as now, a "'dirk' or 'dagger' means a knife or other instrument with or without a handguard that is capable of ready use as a stabbing weapon that may inflict great bodily injury or death." (§ 16470; former § 12020, subd. (a)(24).)

2

its ring. Masangkay testified that the ring could be used as a handle for stabbing, concealing the knife, or "flipping" it.

Detective Michelle Gomez testified that defendant later told her he used the knives as digging tools and that he had previously been arrested for possession of a knife.

Officer Joenador Nepomuceno testified as an expert for the prosecution regarding "edged weapons." He had an extensive background in martial arts and taught edged weapon classes for law enforcement personnel. Nepomuceno testified that the knives found in defendant's backpack are usually sold in sets of three and are principally used for throwing, though they can be used for stabbing. A lanyard, chain, or rope is attached to the ring so that the knife can be retracted after it is thrown.

The jury convicted defendant of carrying a concealed dirk or dagger on his person in violation of former Penal Code section 12020, subdivision (a)(4). (Stats. 2008, ch. 699, § 18, p. 4835.) The court placed defendant on probation for three years on conditions including serving 365 days in jail, with credit for 334 days.

## DISCUSSION

In 2011, former section 12020, subdivision (a)(4) provided criminal penalties for anyone who "[c]arries concealed upon his or her person any dirk or dagger."

Defendant contends that his conviction is not supported by substantial evidence because the knives he possessed were inside of his backpack, and he was thus not carrying them on his person. We agree because the ordinary and usual meaning of the words of the statute; the requirement that both the word "[c]arries" and the phrase "upon his or her person" be given significance and effect; and the legislative history of the statute demonstrate that a dirk or dagger inside a carried or adjacent container is not carried "upon his or her person." Accordingly, the knives contained in the backpack upon which defendant leaned were not carried upon his person, and he did not violate the statute.

During deliberations, the jury honed in upon the very issue presented on appeal by requesting that the trial court "[d]efine on his person." Over defendant's objection, the

court responded, "'On his person' includes upon the body of a person, or the attire or clothing, or a bag or container carried by the person."

In construing a statute, we attempt to determine the intent of the Legislature. (*People v. Albillar* (2010) 51 Cal.4th 47, 54.)  In determining that intent, we first examine the words of the statute, viewing them in their statutory context and giving them their ordinary and usual meaning, because the language of a statute is usually the most reliable indicator of legislative intent.  (*Id.* at p. 55.)  If the language of a statute is unambiguous, the plain meaning controls, and we have no occasion to resort to principles of statutory construction or extrinsic sources.  (*Ibid.*)  Significance should be attributed to every word and phrase of a statute, and a construction making some words surplusage should be avoided.  (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1131.)  We consider the statute as a whole, harmonizing the various elements by considering each clause and section in the context of the overall statutory framework.  (*People v. Jenkins* (1995) 10 Cal.4th 234, 246.)  We select the construction that best comports with the apparent intent of the Legislature, with a view to promoting the purpose of the statute, and avoiding absurd consequences.  (*Ibid.*)  "If the statute is ambiguous, we may consider a variety of extrinsic aids, including legislative history, the statute's purpose, and public policy."  (*People v. Arias* (2008) 45 Cal.4th 169, 177.)  "If a statute defining a crime or punishment is susceptible of two reasonable interpretations, we ordinarily adopt the interpretation that is more favorable to the defendant."  (*Ibid.*)

The ordinary meaning of "upon his or her person" is on the body or in the clothing worn on the body.  Thus, Black's Law Dictionary defines "on the person" as follows:  "In common parlance, when it is said that someone has an article on his person, it means that it is either in contact with his person or is carried in his clothing." (Black's Law Dict. (6th ed. 1990) p. 1089, col. 2.)  In contrast, Black's defines "on or about the person" as follows:  "As used in statutes making it an offense to carry a weapon 'on or about' the person, it is generally held that the word 'on' means connected with or attached to, and that 'about' is a comprehensive term having a broader meaning than 'on,' and conveying

4

the idea of being nearby, in close proximity, within immediate reach, or conveniently accessible." (*Id.*, col. 1) Similarly, "person" in this context means "an individual's body" (New Oxford American Dict. (2010) at <http://www.oxfordreference.com> [as of Apr. 16, 2013]), "the body of a human being; *also*: the body and clothing" (Merriam-Webster (2013) at <http://www.merriam-webster.com> [as of Apr. 16, 2013]). Thus, giving the words of the statute their ordinary and usual meaning, a dirk or dagger inside an adjacent container, such as the backpack upon which defendant was leaning, or even inside a carried container, is not "upon his or her person." The knives in defendant's backpack may have been on or about defendant's person, but the statute does not criminalize carrying a dirk or dagger on or about the person, only carrying a dirk or dagger "upon" the person.

In addition, a defendant violates the statute only if he or she "[*c*]*arries* concealed *upon his or her person* any dirk or dagger." (Former § 12020, subd. (a)(4), italics added.) If the Legislature intended to include within the statute's scope the act of carrying a dirk or dagger in a backpack or other container, the phrase "upon his or her person" is meaningless surplusage. If that were the Legislature's intent, it could have fully expressed it by phrasing former subdivision (a)(4) as "carries any concealed dirk or dagger." Conversely, if the Legislature intended for the phrase "upon his or her person" to include containers that are carried, then "carries" is meaningless surplusage. But the Legislature defined the crime using separate language for the elements of carrying and the place of carrying, that is, upon the person. In order to give effect to both the carrying and "upon his or her person" elements of the statute, as we must presume the Legislature intended, the phrase "upon his or her person" cannot be construed to include a container that is carried.

Our conclusion regarding the intent of the Legislature is reinforced by an examination of legislative history. Assemblymember Granlund introduced Assembly Bill No. 78 during the 1997–1998 Regular Session of the Legislature. On March 17, 1997, the author amended the bill to include the following language in former section 12020,

subdivision (b), which provides exemptions from the scope of subdivision (a): "(17) A knife that is carried in a backpack, tool belt, tackle box, briefcase, purse, or similar container that is used to carry or transport possessions." (Legis. Counsel's Dig., Assem. Bill No. 78, as amended Mar. 17, 1997 (1997–1998 Reg. Sess.).) On March 20, 1997, the author again amended the bill to replace "knife" in the above-quoted provision to "dirk or dagger." Thus, the bill would have added to former section 12020, subdivision (b), the following exemption: "(17) A dirk or dagger that is carried in a backpack, tool belt, tackle box, briefcase, purse, or similar container that is used to carry or transport possessions." (Legis. Counsel's Dig., Assem. Bill No. 78, as amended Mar. 20, 1997 (1997–1998 Reg. Sess.).)

The bill analysis prepared by chief counsel for the Assembly Committee on Public Safety characterized the above-quoted portion of Assembly Bill No. 78, as amended March 20, 1997, as "[*codifying*] *case law* that a dirk or dagger is not concealed upon the person where the dirk or dagger that [*sic*] is carried in a backpack, tool belt, tackle box, briefcase, purse, or similar container that is used to carry or transport possessions." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 78 (1997–1998 Reg. Sess.) as amended Mar. 20, 1997, p. 1, italics added.) The bill analysis further explained, "Under current Section 12020, dirks or daggers are considered to be illegally carried only if carried concealed upon the person. *Case law suggests that this is under the person's clothes.* [¶] . . . At the request of the Buck Knives, AB 798 [*sic*] also provides that a dirk or dagger is not illegally carried concealed if it is carried in a backpack, tool belt, tackle box, briefcase, purse, or similar container that is used to carry or transport possessions. *This appears to be consistent with current case law.*" (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 78 (1997–1998 Reg. Sess.) as amended Mar. 20, 1997, p. 6, italics added.) The Assembly Committee on Public Safety unanimously approved Assembly Bill No. 78, as amended March 20, 1997, and the bill analysis for the third reading in the Assembly repeated that the amendment regarding a dirk or dagger carried in a container "[*c*]*odifies case law* that a dirk or dagger is not

6

concealed upon the person where the dirk or dagger that [*sic*] is carried in a backpack, tool belt, tackle box, briefcase, purse, or similar container that is used to carry or transport possessions." (Assem. Floor Analysis of Assem. Bill No. 78 (1997–1998 Reg. Sess.) as amended Mar. 20, 1997, p. 1, italics added.) The Assembly unanimously passed Assembly Bill No. 78, as amended March 20, 1997.

The Senate Public Safety Committee considered Assembly Bill No. 78 on May 29, 1997. (Legis. Counsel's Dig., Assem. Bill No. 78, as amended May 29, 1997 (1997–1998 Reg. Sess.).) The bill analysis prepared for a June 10, 1997 hearing by the Senate Committee on Public Safety suggested deletion of the exemption for a dirk or dagger carried in a backpack or other container: "*In order to prevent possible confusion*, committee staff recommends deleting the language on page 7, lines 36–38 ['(17) A dirk or dagger that is carried in a backpack, tool belt, tackle box, briefcase, purse, or similar container that is used to carry or transport possessions'], of this bill pertaining to odirks [*sic*] and daggers.o [*sic*] Staff and interested parties appear to have agreed to that amendment." (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 78 (1997–1998 Reg. Sess.) as amended May 29, 1997, pp. 12–13, italics added.) On June 17, 1997, the Senate amended the bill by deleting the exemption for a dirk or dagger carried in a backpack or other container. (Legis. Counsel's Dig., Assem. Bill No. 78, as amended June 17, 1997 (1997–1998 Reg. Sess.).) On July 17, 1997, after further amendments irrelevant to the issue on appeal, the Senate passed Assembly Bill No. 78, as amended in the Senate on July 7, 1997.

The report prepared for the Assembly's consideration of the Senate amendments to the bill explained that the Senate amendments "[d]elete *a duplicative provision of this bill as it passed the Assembly relating to when a dirk or dagger was not concealed upon the person*." (Concurrence in Sen. Amendments, Rep. on Assem. Bill No. 78 (1997–1998 Reg. Sess.) as amended July 7, 1997, italics added.) The Assembly approved the bill as amended by the Senate, and the legislation was signed by the Governor.

Although the proposed exemption for a dirk or dagger carried in a backpack or other container was not enacted, the legislative history of Assembly Bill No. 78 (1997–1998 Reg. Sess.) demonstrates that the Legislature considered that proposed exemption to reflect what it believed was established law, that is, a dirk or dagger carried in a backpack, tool belt, tackle box, briefcase, purse, or similar container that is used to carry or transport possessions is not concealed "upon his or her person," and thus does not violate former section 12020, subdivision (a)(4). The proposed exemption was deleted not because the Legislature disagreed with the merits or advisability of the exemption, but because the Legislature viewed the proposed exemption as "duplicative" of established law and wanted "to prevent possible confusion." This is completely consistent with and reinforces our conclusion that in order to give the words "upon his or her person" their ordinary meaning, to attribute significance to every word and phrase in former section 12020, subdivision (a)(4), and to avoid a construction that would make either "carries" or "upon his or her person" surplusage, the phrase "upon his or her person" does not include a carried or adjacent container, such as the backpack upon which defendant was leaning.

The Attorney General principally relies upon *People v. Dunn* (1976) 61 Cal.App.3d. Supp. 12 (*Dunn*) for her contention that the knives in the backpack were carried concealed upon defendant's person. There, the Appellate Department of the Los Angeles Superior Court considered whether a defendant "'carrie[d] concealed upon his person any pistol'" in violation of former section 12025, subdivision (b), as it then existed. Dunn took a suitcase containing a semiautomatic handgun with him into the airport, and the gun was revealed by an X-ray of the suitcase. (*Id.* at p. Supp. 13.)

On appeal of his misdemeanor conviction, Dunn argued that the weapon was not carried concealed upon his person. He asserted "that the Legislature meant, by the phrase 'upon his person,' a man's attire or clothing exclusive of handbags, attache [*sic*] cases, suitcases, and the like. With respect to a woman, however, appellant argues that the legislative intent was to *include* such items as purses and handbags within the meaning of the phrase." (*Dunn*, *supra*, 61 Cal.App.3d. at pp. Supp. 13–14.) The *Dunn* court noted

8

that such an interpretation would lead to a "bizarre" and "unconstitutional" result that would permit men, but not women, to carry concealed weapons in purses and attaché cases. (*Id.* at p. Supp. 14.) The court concluded that "the Legislature intended to proscribe the carrying of concealed weapons by both men and women and that a handgun concealed in a suitcase and carried by appellant is sufficiently 'upon his person' to constitute a violation of section 12025." (*Ibid.*) Finding no California authorities on point, the court relied upon a New York Court of Appeals search and seizure case, *People v. Pugach* (1964) 15 N.Y.2d 65 [255 N.Y.S.2d 833, 204 N.E.2d 176] (*Pugach*). *Pugach* addressed the propriety of police officers searching the briefcase carried by a suspect they put into their squad car. Pugach argued the search of his briefcase could not be deemed a search incident to arrest because there was no showing of probable cause for arrest. (*Pugach*, 15 N.Y.2d at pp. 68–69.) Over a vigorous dissent, the majority of the appellate court concluded that the officers were justified in opening the briefcase as part of their "routine 'frisk'" incident to Pugach's detention. (*Id.* at p. 69.) The majority opinion stated, "The fact that the loaded gun was found concealed in the brief case, rather than in a pocket of defendant's clothing, affords no ground for saying that this 'frisk' was in reality a constitutionally protected search. The loaded firearm concealed in the brief case carried in the hands of the defendant was in the language of the statute 'concealed upon his person' (Penal Law, s 1897)." (*Ibid.*)

The *Dunn* court's reliance upon a New York search and seizure case to determine the intent of California's Legislature was misplaced. To the extent *Pugach* may be read as reflecting a determination of the intent of the New York Legislature in enacting the cited statute containing the phrase "concealed upon his person," the same intent cannot be automatically imputed to the California Legislature. *Dunn* did not engage in any examination of the language or legislative history of former section 12025 to determine whether "carries concealed upon his person" included a container such as Dunn's suitcase. Of course, the *Dunn* court did not have the benefit of the legislative history of the proposed amendments to former section 12020 from the 1997–1998 Regular Session,

9

upon which we have relied. In addition, the attention of the court in *Dunn* was apparently focused upon addressing Dunn's "bizarre" and "unconstitutional" contention that men, but not women, could legally carry guns concealed in certain containers. For all of these reasons, as well as our own examination of the legislative intent underlying former section 12020, subdivision (a)(4), we disagree with the conclusion of *Dunn*.

The Attorney General also argues that the knives in defendant's backpack were "at his fingertips and the ease of access to the knives was the same" as if they were in his clothing. We need not address the differences between carrying a knife in, for example, a trouser or coat pocket, and defendant having a knife inside a pouch contained inside the zipped backpack upon which he was leaning. It suffices to note that "[c]ourts may not create a criminal offense by enlarging a statute or giving its terms false or unusual meanings. Penal statutes may not be made to reach beyond their plain intent, covering only crimes coming clearly within the statutory language." (*People v. Kozlowski* (2002) 96 Cal.App.4th 853, 865.) In addition, it is not the function of the courts to judge the wisdom of statutes or the way they are written. (*Wells Fargo Bank v. Superior Court* (1991) 53 Cal.3d 1082, 1099; *People v. Hill* (1995) 37 Cal.App.4th 220, 226.) If the Legislature had wanted to criminalize possession of a dirk or dagger that is concealed inside a carried container, it could have expressly referred to dirks or daggers inside carried containers or replaced the phrase "upon his or her person" with "on or about his or her person." The Legislature did not choose any of these alternatives, and for all of the reasons set forth in this opinion, we conclude that "upon the person" does not include a carried or adjacent container, such as the backpack upon which defendant was leaning.

That the Legislature did not outlaw carrying a dirk or dagger in a backpack is understandable, given the utility of a knife in such lawful pursuits as fishing, hunting, camping, picknicking and the like. But it did see fit to outlaw *possession* of a shuriken,

three of which were found in defendant's backpack.  (Former § 12020, subd. (a)(1)[2] ["(a) Any person in this state who does any of the following is punishable by imprisonment in a county jail not exceeding one year or in the state prison:  [¶]  (1)  . . . [P]ossesses . . . any shuriken . . . ."]; Stats. 2008, ch. 699, § 18, p. 4835.)  Had defendant been charged with a violation of that subdivision, substantial evidence would have supported his conviction based upon possession of the shurikens in his backpack.

In light of our conclusion that defendant did not violate former section 12020, subdivision (a)(4), we need not address his remaining contentions.  Because we reverse for insufficiency of evidence, defendant may not be retried.

## DISPOSITION

The judgment is reversed.

CERTIFIED FOR PUBLICATION.


                                                 MALLANO, P. J.

We concur:


        ROTHSCHILD, J.


        CHANEY, J.

---

[2] The current equivalent statute is section 22410, which provides, "Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any shuriken is punishable by imprisonment in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170."