Filed 2/10/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B255894 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BA421048) |
| v. | |
| STEVEN WADE, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County. Clifford L. Klein, Judge. Reversed.

Jackie Lacy, District Attorney, Phyllis C. Asayama and Scott D. Collins, Deputy District Attorneys, for Plaintiff and Appellant.

Jean Ballantine, under appointment by the Court of Appeal, for Defendant and Respondent.

_____

Defendant Steven Wade was held to answer on a charge of carrying a loaded firearm on his person (Pen. Code, § 25850, subd. (a)).[1] Preliminary hearing testimony established that defendant was wearing a backpack containing a loaded revolver while being pursued by a police officer. The trial court granted defendant's section 995 motion to dismiss, finding that defendant did not carry the firearm on his person under the reasoning in *People v. Pellecer* (2013) 215 Cal.App.4th 508 (*Pellecer*), which held that a knife contained in a backpack is not carried "on the person."

On appeal by the People, we reverse. A defendant wearing a backpack containing a firearm carries the firearm on his or her person. We decline to apply the reasoning in *Pellecer*, *supra*, 215 Cal.App.4th 508, to possession of a firearm concealed in a backpack in light of the historical interpretation of "carries a loaded firearm on the person" in California, which is in accord with decisions from other jurisdictions considering language similar to section 25850, subdivision (a).

## DISCUSSION

Section 25850, subdivision (a) provides as follows: "A person is guilty of carrying a loaded firearm when the person carries a loaded firearm on the person or in a vehicle while in any public place or on any public street." The issue presented is whether a person wearing a backpack containing a loaded firearm "carries a loaded firearm on the person."

**Standard of Review**

"Insofar as the Penal Code section 995 motion rests on issues of statutory interpretation, our review is de novo. (*People v. Superior Court* (*Ferguson*) (2005) 132

---

[1] All statutory references are to the Penal Code, unless otherwise indicated.

2

Cal.App.4th 1525, 1529.)" (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1072.) "'Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. (*Dyna–Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387.) We must look to the statute's words and give them their usual and ordinary meaning. (*DaFonte v. Up–Right, Inc.* (1992) 2 Cal.4th 593, 601.) The statute's plain meaning controls the court's interpretation unless its words are ambiguous.' (*Green v. State of California* (2007) 42 Cal.4th 254, 260.)" (*People v. Robinson* (2010) 47 Cal.4th 1104, 1138.)

**The Relevant Statutes**

Section 25850, subdivision (a), is the successor statute to former section 12031, subdivision (a)(1), which was repealed in 2010 as part of the Deadly Weapons Recodification Act of 2010 (The Act). [2] (§ 16000 et seq.) The Act is not intended to substantively change the law relating to deadly weapons and "is intended to be entirely nonsubstantive in effect." (§ 16005.) Provisions of the Act are intended to be restatements and continuation of prior statutes in the absence of the appearance of a contrary legislative intent. (§ 16010.) "A judicial decision interpreting a previously existing provision is relevant in interpreting any provision of" the Act, although "the Legislature has not evaluated the correctness of any judicial decision interpreting a provision affected by the act" and it "is not intended to, and does not, reflect any assessment of any judicial decision interpreting any provision affected by the act." (§ 16020.)

""""The general purpose of The Dangerous Weapons[ ] Control Law ([former] § 12000 et seq.) is to control the threat to public safety in the indiscriminate possession and carrying about of concealed and loaded weapons."" (*Garber v. Superior Court* (2010) 184 Cal.App.4th 724, 730.)" (*People v. Vaughn* (2014) 230 Cal.App.4th 322, 332.)

---

[2] The earlier version of the Deadly Weapons Control Law is found in former section 12000 et seq.

"[C]arrying a concealed firearm presents a recognized 'threat to public order'" because immediate access to the firearm impedes others from detecting its presence. (*People v. Yarbrough* (2008) 169 Cal.App.4th 303, 314, citing *People v. Hodges* (1999) 70 Cal.App.4th 1348, 1357, and *People v. Hale* (1974) 43 Cal.App.3d 353, 356.)

California courts apply this broad legislative purpose in interpreting statutes regulating the possession of firearms. For example, courts have refused to impose an element of operability to statutes regulating firearms use and possession. "The Dangerous Weapons' Control Law ([former] § 12000 et seq.) provides for various penalties and enhancements for use of firearms. Following the legislature's amendment of Penal Code section 12001, no court has held operability of a firearm to be an element of the Dangerous Weapons' Control Law. Thus Penal Code section 12022, subdivision (a) (enhancing a sentence when a felony is committed while armed), (*People v. Nelums* (1982) 31 Cal.3d 355), [former] section 12020 (possession of a sawed-off shotgun), (*People v. Favalora* (1974) 42 Cal.App.3d 988, 991), [former] section 12021 (possession of a concealable firearm by an ex-felon), (*People v. Thompson* (1977) 72 Cal.App.3d 1), Penal Code section 12022.5 (enhancement for use of a firearm during commission of a felony), (*People v. Jackson* [(1979)] 92 Cal.App.3d 899), and Penal Code section 4574 (possession of a firearm while confined in jail), (*People v. Talkington* (1983) 140 Cal.App.3d 557) all were held not to require operability of the firearm." (*People v. Taylor* (1984) 151 Cal.App.3d 432, 437; see also *People v. Marroquin* (1989) 210 Cal.App.3d 77, 80-82 [former §12025 prohibiting carrying a concealed firearm does not require operability].)

The issue in *People v. Dunn* (1976) 61 Cal.App.3d Supp. 12 (*Dunn*) is indistinguishable from that presented in this case. In *Dunn*, the defendant had a firearm in his suitcase at the airport, and was convicted of violating former section 12025, which provided as follows: "(b) Any person who carries concealed upon his person any pistol, revolver, or other firearm capable of being concealed upon the person without having a license to carry such firearm . . . is guilty of a misdemeanor . . . ." The former Appellate

4

Department[3] of the Los Angeles Superior Court rejected the defendant's argument that he did not carry the handgun on his person because it was in a suitcase, as opposed to being carried in a woman's purse, which the defendant conceded would violate the statute. "We hold that the Legislature intended to proscribe the carrying of concealed weapons by both men and women and that a handgun concealed in a suitcase and carried by appellant is sufficiently 'upon his person' to constitute a violation of [former] section 12025." (*Dunn*, *supra*, at p. 14; see also *People v. Overturf* (1976) 64 Cal.App.3d Supp. 1, 6 ["in the context of statutes concerned with firearms, 'carry' or 'carrying' has been said to be used in the sense of holding or bearing arms"]; *People v. Smith* (1946) 72 Cal.App.2d Supp. 875, 878 ["'"carries" or the words "to carry," as used in the statutes defining the offense . . ., are used in the sense of to have concealed about the person, or to bear concealed about the person; and it is necessary to a conviction of this offense only that the concealed weapon be so connected with the person that the locomotion of the body would carry with it the weapon as concealed'"].)

These California authorities are consistent with decisions in other states interpreting statutes similar to section 25850, subdivision (a). (See *De Nardo v. State* (Alaska Ct.App. 1991) 819 P.2d 903, 908 [De Nardo's act of carrying a long-bladed knife in a briefcase constituted the concealment of a dangerous weapon "'on his person'"].) "Case law from around the country supports the proposition that a person who carries a deadly weapon in a purse, a briefcase, or even a paper bag commits the offense of carrying a concealed weapon. (See, e.g., *People v. Foster* (Ill. App.Ct. 1961) 178 N.E.2d 402, 404 [handgun in a zippered athletic bag]; *State v. Britt* (Neb. 1978) 264 N.W.2d 670, 673 [handgun in a gymnasium bag]; *Bell v. State* (Ga. Ct.App. 1986) 347 S.E.2d 725, 726 [handgun in a zippered shaving kit carried in the defendant's hand]; *Schaaf v. Commonwealth* (Va. 1979) 258 S.E.2d 574 [handgun in a purse]; *State v. Molins* (Fla. Dist.Ct.App. 1982) 424 So.2d 29, 30 [handgun in a zippered gun case within a zippered canvas suitcase]; *Rogers v. State* (Fla. Dist.Ct.App. 1976) 336 So.2d 1233, 1234

---

[3] The former Appellate Department is now referred to as the Appellate Division.

[handgun in a briefcase]; *State v. Straub* (Mo. Ct.App. 1986) 715 S.W.2d 21, 22 [handgun in a paper bag]; *People v. Williams* (Ill. App.Ct. 1973) 305 N.E.2d 186, 187 [sawed-off rifle in a paper bag])." (*De Nardo v. State*, *supra*, at pp. 905-906, fn. omitted; see also *State v. Anfield* (Or. 1992) 836 P.2d 1337, 1340 [agreeing "with the analysis of other courts that have concluded that the language, 'upon the person,' includes purses, handbags, bags, and their contents, when they are carried in the manner that defendant was carrying this bag"]; *State v. Finlay* (Or. Ct.App. 2002) 42 P.3d 326, 328-329 [suitcase containing firearm at the airport was on the person of the defendant]; 43 A.L.R.2d 492 ["the majority of the cases support the statement that the defendant's carrying of a weapon hidden in a bag, bundle, lunch basket, traveling bag, or other similar article which is held in the hand or placed under the arm, is generally sufficient to constitute a transgression of the statute"].)

The decision of the United States Supreme Court in *Muscarello v. United States* (1998) 524 U.S. 125 reaches the same result as the decisions of the state courts. The court held that "carries a firearm" is not limited to carrying it on the person. "No one doubts that one who bears arms on his person 'carries a weapon.' But to say that is not to deny that one may *also* 'carry a weapon' tied to the saddle of a horse or placed in a bag in a car." (*Id.* at p. 130.)

### *People v. Pellecer*

For 37 years, the holding in *Dunn*, *supra*, 61 Cal.App.3d Supp. 12, went unquestioned in California and courts in other states. *Dunn's* acceptance ended in 2013 with *Pellecer*, *supra*, 215 Cal.App.4th at pages 510-511, which held that the prohibition against carrying a concealed dirk or dagger on the person in former section 12020 (now section 21310[4]) did not apply where the defendant was found leaning on a backpack

---

[4] Section 21310 provides in pertinent part as follows: "[A]ny person in this state who carries concealed upon the person any dirk or dagger is punishable by imprisonment

6

containing three knives, because "the knives in his backpack were not carried on his person." The trial court in this case concluded it was bound by *Pellecer*, because in this case, as in *Pellecer*, the prohibited weapon was found inside a backpack.

"The ordinary meaning of 'upon his or her person' is on the body or in the clothing worn on the body," as distinguished from being "on or about the person," according to dictionary definitions cited in *Pellecer*, *supra*, 215 Cal.App.4th at page 513. "The knives in defendant's backpack may have been on or about defendant's person, but the statute does not criminalize carrying a dirk or dagger on or about the person, only carrying a dirk or dagger 'upon' the person." (*Ibid.*) The *Pellecer* court emphasized that the statutory language applies to a defendant "only if he or she '[c]arries concealed *upon his or her person* any dirk or dagger'" and if the legislature intended to criminalize carrying a dirk or dagger in a backpack or other container "it could have fully expressed it by phrasing former subdivision (a)(4) as 'carries any concealed dirk or dagger.'" (*Ibid.*)

The *Pellecer* analysis relied heavily on a rejected 1997 amendment to former section 12020, which would have modified the statute to expressly state that it is not unlawful to carry a dirk or dagger in a backpack. (*Pellecer*, *supra*, 215 Cal.App.4th at pp. 514-515.) According to the cited legislative history, the amendment was considered unnecessary because such conduct was not criminal under existing case law. (*Id.* at p. 515.) Significantly, that purported case law is not cited in either the legislative history, or in *Pellecer*.

*Pellecer*, *supra*, 215 Cal.App.4th at pages 516-517, rejected the Attorney General's[5] reliance on *Dunn*, *supra*, 61 Cal.App.3d Supp. 12, for the proposition that a weapon carried in a backpack is carried concealed upon the person. *Pellecer* criticized

in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170."

[5] The Attorney General did not petition the California Supreme Court for review of the decision in *Pellecer*. The instant appeal is brought by the District Attorney of Los Angeles County.

the *Dunn* court's citation to *People v. Pugach* (1964) 255 N.Y.S.2d 833 (*Pugach*), which the *Pellecer* described as a search and seizure case. (*Pellecer*, *supra*, at p. 516.) In determining the legality of the search in *Pugach*, New York's highest court affirmatively described substantive New York law as follows: "The loaded firearm concealed in the brief case carried in the hands of the defendant was in the language of the statute 'concealed upon his person' (Penal Law, § 1897.)" (*Pugach*, *supra*, at p. 836.) A discussion of substantive New York law was required in *Pugach* to resolve the search and seizure issue, and we disagree with *Pellecer*'s unduly narrow reading of the case. As added criticism of *Dunn*, the *Pellecer* court stated that while *Pugach* may reflect the intent of the New York Legislature as to the meaning of the statutory phrase "concealed upon his person," that "intent cannot be automatically imputed to the California Legislature" and *Dunn* did not examine the legislative history of former section 12025 "to determine whether 'carries concealed upon his persons' included a container such as Dunn's suitcase." (*Id.* at pp. 516-517.) But the *Dunn* court never suggested that *Pugach* described California's legislative intent. The interpretation of a similar statute by a highly regarded court of another state was persuasive authority that assisted in interpreting California law.

In our view, the holding in *Dunn* is consistent with the purpose of the Act, which is to prevent a person from carrying a readily accessible concealed firearm. We have no difficulty in concluding that defendant's immediate access to the revolver within the backpack he wore created the type of clear threat to the general public and the pursuing officer that is prohibited by section 25850, subdivision (a).

Furthermore, *Pellecer* is distinguishable on two bases. First, the defendant in *Pellecer* was leaning on his backpack, as opposed to defendant, who wore the backpack containing the revolver while fleeing from the officer. The factual basis for the "carries" aspect of section 25850, subdivision (a), is readily apparent in this case. Second, although not acknowledged by the *Pellecer* court, concealed knives and firearms represent varying degrees of danger, and the legislature treats the public possession of firearms and knives differently. While "[a] knife carried in a sheath that is worn openly

8

suspended from the waist of the wearer is not concealed within the meaning of Section . . . 21310" (§ 20200), a firearm may not be worn openly in a public place or in a vehicle (§ 26350, subd. (a)(1).) Thus, assuming *Pellecer* correctly defines the scope of former section 12020, involving knives, it does not follow that the same interpretation applies to section 25850, subdivision (a).

Finally, we reject defendant's reliance on the rule of lenity. The rule of lenity applies where there is an "egregious ambiguity" as to the meaning of a statute. (*People v. Avery* (2002) 27 Cal.4th 49, 58.) Section 25850, subdivision (a), is not egregiously ambiguous. Courts of this state and other states that have considered the meaning of similar statutes consistently conclude that a person carrying a concealed firearm in an object such as a suitcase, purse, or bag, carries the weapon concealed on the person. The only uncertainty in this area is the result of the decision in *Pellecer*, which does not control the interpretation of section 25850, subdivision (a).

## DISPOSITION

The order setting aside the charge of violating Penal Code section 25850, subdivision (a), is reversed.


KRIEGLER, J.


I concur:


MOSK, Acting P. J.


9

Goodman, J., Concurring

     I fully concur.  I add this statement to emphasize that Wade had immediate and full control of the backpack and of the (loaded) firearm he carried inside it, as demonstrated by both his wearing the backpack and taking it off and discarding it as the officer pursued him.  It would have been just as easy for Wade to have opened the backpack and fired the weapon as it would have been for him to have taken the gun from a holster or from a fastened (or unfastened) inside pocket of a jacket he might have been wearing.  The element common to all of these circumstances is immediate access to the firearm.

GOODMAN, J.*

---

*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.