Filed 7/10/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DYLAN JAMES BAY,<br><br>        Defendant and Appellant. | A154498<br><br>(Napa County<br>Super. Ct. No. CR184636) |

At trial, Dylan Bay was convicted of felony counts of being a felon in possession of a firearm and ammunition and misdemeanor counts of possessing burglary tools and giving false information to a peace officer. Bay admitted two prior-prison-term allegations were true, and the trial court sentenced him to three years and eight months in prison.

On appeal, Bay claims that insufficient evidence supports the three possession convictions. He also claims, and the Attorney General concedes, that the trial court erred by staying instead of striking one of the prior-prison-term enhancements. We affirm the felony convictions for possession of a firearm and ammunition, because substantial evidence supports a finding that the contraband was in Bay's constructive possession. But we reverse the misdemeanor conviction under Penal Code[1] section 466 for possession of burglary tools, because no evidence supports a finding that any such tools

_____

[1] All further statutory references are to the Penal Code.

1

were "upon [Bay] in his . . . possession."[2]  We also agree that the prior-prison-term enhancement should have been stricken.  Otherwise, we affirm the judgment.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

At around 2:00 a.m. on September 9, 2017, a Napa County Sheriff's deputy was on patrol when he noticed a Cadillac SUV parked illegally near a popular overlook.  The deputy approached and saw three people in the vehicle, including Bay, who was sitting in the driver's seat.  When asked what they were doing, Bay said "they were just sitting there looking at the view and asked . . . if they were doing something wrong."  The deputy indicated a no-parking sign and asked Bay for identification.  Bay, whom the deputy knew from prior contacts, stated that he did not have identification and provided a false name.  Knowing that Bay was on postrelease community supervision (PRCS) and subject to search terms, the deputy asked him to get out of the vehicle.

After Bay complied, the deputy asked him "[i]f he had any guns, knives, drugs[,] or any other weapons on him or in the vehicle," and Bay said, "Not that I know of."  The deputy then conducted a pat search of Bay's person and felt a wallet in his back pocket.  Bay admitted that the wallet contained identification in his real name.  The deputy asked why he had provided a false name, and Bay said that "[h]e was worried that he might have a warrant."  Before searching the SUV, the deputy asked Bay again whether there was any contraband in the vehicle.  This time, Bay admitted "there was an amount of marijuana in the small pouch of the Jansport backpack inside the vehicle."

While Bay was detained in the deputy's patrol vehicle, the deputy spoke to the other two people in the SUV, a woman in the front passenger's seat named N.F. and a man in the backseat named R.Z.  The vehicle, which belonged to N.F., was "[e]xtremely messy."  The deputy described the interior as having "a lot of items packed in very tightly," and the man "in the back appeared to have been packed in there with the items."

---

[2] As a result, we need not address Bay's claim of instructional error involving this conviction.

2

The backpack Bay had mentioned was "directly behind the center console," almost sitting on top of it, and the deputy testified that it would have been accessible by all three people in the car. Upon searching the backpack, the deputy found marijuana, as well as a notebook, in its front compartment. The back compartment contained a loaded .380 caliber pistol in a gun case, boxes of ammunition, a lock pick set, a bong, and a hypodermic needle. In addition, a butterfly knife was in the console of the driver's door.[3]

The registered owner of the pistol was later determined to be S.Z., the recently deceased boyfriend of N.F. and brother of R.Z. A piece of paper with S.Z.'s name on it was inside the gun case. The deputy formed the impression that there was "some sort of relationship" between Bay and N.F., but he was unaware of any direct relationship between Bay and S.Z.

An evidence technician testified that she performed a fingerprint analysis on the pistol, an ammunition box, the lock pick set, and the butterfly knife, which were the only items collected as evidence. There were no usable fingerprints on any of them. In addition, although the technician swabbed the items for possible DNA, those samples were never tested.

Bay was charged with two felonies, being a felon in possession of a firearm and being a felon in possession of ammunition, and three misdemeanors, providing false information to a peace officer, possessing burglary tools, and carrying a switchblade knife. It was also alleged that he had served two prior prison terms for two 2016 felony convictions.[4] Before trial, Bay stipulated that he was a felon and admitted the prior-prison-term allegations.

---

[3] A disassembled rifle in a gun case was found where R.Z. had been sitting and some knives were "packed away" in the back of the SUV, but Bay was not charged with possessing these items.

[4] The charges were brought under sections 29800, subdivision (a)(1) (felon in possession of firearm), 30305, subdivision (a) (felon in possession of ammunition), 148.9, subdivision (a) (providing false information), 466 (possessing burglary tools), and 21510 (carrying switchblade). The enhancement allegations were made under section 667.5.

A jury acquitted Bay of carrying a switchblade knife and convicted him of the four other counts.  The trial court denied probation and sentenced him to a total of three years and eight months in prison, composed of a term of two years for the firearm possession and consecutive terms of eight months for the ammunition possession and one year for one of the prior-prison-term enhancements.  He was also sentenced to two concurrent terms of six months in jail for providing false information and possessing burglary tools, and a one-year term for the other prior-prison-term enhancement was imposed and stayed.

II.

DISCUSSION

A.      *Substantial Evidence Supports the Convictions for Possession of a Firearm and Ammunition but Not the Conviction for Possession of Burglary Tools.*

Bay claims that his convictions for possession of a firearm, ammunition, and burglary tools must be reversed because there was insufficient evidence that he knew the backpack contained these items.  We agree with the Attorney General that substantial evidence supports the conclusion that Bay constructively possessed the backpack and its contents, and on this basis we affirm the convictions for possession of a firearm and ammunition.  But we reverse the conviction for possession of burglary tools under section 466, because that statute requires that a defendant have the tools not just in his or her constructive possession but "upon him or her in his or her possession."[5]

1.      Standard of review.

In analyzing claims such as Bay's, " ' " 'we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence— that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" [Citation.]  In conducting such a review, we " 'presume[] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.]"

---

[5] We requested and received supplemental briefing from both parties on how we should interpret this statutory language.

4

[Citations.] "Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." ' " (*People v. Harris* (2013) 57 Cal.4th 804, 849.)

This standard of review also applies " 'in cases in which the prosecution relies mainly on circumstantial evidence. [Citation.] " 'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt. " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.' " ' " ' " (*People v. Harris*, *supra*, 57 Cal.4th at pp. 849–850.)

> 2.   Substantial evidence supports the convictions for possession of the pistol and the ammunition because the jury could reasonably infer that Bay had constructive possession of the backpack.

The firearm- and ammunition-possession offenses prohibit a felon from "possess[ing]" or having "under custody or control" the given item (§§ 29800, subd. (a)(1), 30305, subd. (a)(1)), and they are general-intent crimes that require knowing possession of the prohibited item. (*People v. Frutoz* (2017) 8 Cal.App.5th 171, 176; *People v. Jeffers* (1996) 41 Cal.App.4th 917, 922; see CALCRIM Nos. 2511, 2591.) Possession may be actual or constructive. " 'A defendant has actual possession when the weapon is in his [or her] immediate possession or control,' " i.e., when he or she is actually holding or touching it. (*People v. Blakely* (2014) 225 Cal.App.4th 1042, 1052; see *People v. Montero* (2007) 155 Cal.App.4th 1170, 1179; CALCRIM Nos. 2511, 2591.) "To establish constructive possession, the prosecution must prove a defendant knowingly exercised a right to control the prohibited item, either directly or through another person." (*People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1417, disapproved on another ground in *People v. Farwell* (2018) 5 Cal.5th 295, 304, fn. 6.) Although a

5

defendant may share possession with other people, "mere proximity" or opportunity to access the contraband, "standing alone, is not sufficient evidence of possession." (*Sifuentes*, at p. 1417; *People v. Zyduck* (1969) 270 Cal.App.2d 334, 336.)

We agree with the Attorney General that the evidence of Bay's knowledge of the items in the backpack was, "not overwhelming." But applying our limited standard of review, we conclude there was sufficient evidence from which the jury could infer that Bay knowingly possessed the pistol and ammunition. Contrary to Bay's position, there *was* evidence "to support the inference that the backpack belonged to [him]." (Italics and boldface omitted.) Namely, he knew there was marijuana inside the backpack's front pocket, which supports the conclusion that he exercised dominion and control over the backpack. To be sure, it is possible that the backpack was not Bay's, especially given the evidence tying the pistol to S.Z., and that Bay knew of the marijuana's presence for some reason other than that he put it there or had assumed knowing control of the backpack and its contents. But the jury could have reasonably inferred Bay's ownership or control of the backpack, a type of personal container not normally shared among multiple people, based on his knowledge of the marijuana's particular location. (See *People v. Baker* (2008) 164 Cal.App.4th 1152, 1159–1160 [a purse is "an inherently private repository for personal items" that "is not generally an object for which two or more persons share common use or authority"].)

Bay argues that it is also unreasonable to infer that he was aware of the items in the backpack's back pocket based on his knowledge of the marijuana in the front pocket. He provides no authority for distinguishing between the compartments of the backpack in this manner, and we decline to do so. His knowledge of the marijuana's presence supported the inference that he exercised control over the backpack, which in turn supported an inference that he exercised control over the *entire* backpack.

Finally, we note that in "cases where the sufficiency of the evidence might otherwise have been doubtful," courts have found the evidence "strengthened by a showing of consciousness of guilt." (*People v. Redrick* (1961) 55 Cal.2d 282, 287–288.) Bay claims that the fact he gave a fake name when initially contacted, which he explained

6

he did because he thought he had a warrant, "did not support the inference that he knew what was inside the backpack's main compartment" and "had nothing to do with the backpack, especially since [it] and its contents did not contain his name or any indicia in it." The jury was not required to credit Bay's explanation for the misrepresentation, however, and could have reasonably inferred that he provided a fake name because he knew he was subject to warrantless searches and did not want the contraband in the backpack to be discovered. Given the totality of the circumstances, substantial evidence supports the convictions for possession of a firearm and ammunition.

3. The conviction for possession of burglary tools must be reversed because Bay did not have the tools "upon him."

We reach a different result with respect to the conviction for possession of burglary tools, based on a material difference between the elements of that offense and the other two challenged convictions. The firearm- and ammunition-possession statutes prohibit a felon from "possess[ing]" or having "under custody or control" the given item. (§§ 29800, subd. (a)(1), 30305, subd. (a)(1).) In contrast, section 466 prohibits a person from having burglary tools "*upon him or her* in his or her possession." (§ 466, italics added.) We cannot conclude that Bay was guilty under this statute because, even though he had constructive possession of the backpack and it contained the lock pick set, he was not carrying the backpack.

Although we are not aware of any other state statutes using the precise phrase "upon him or her" to refer to possession or related concepts, statutes using the phrase "upon the person" or "on the person" are closely analogous. In *People v. Wade* (2016) 63 Cal.4th 137, the Supreme Court held that a defendant who wore a backpack containing a gun had carried a loaded firearm "on the person" within the meaning of section 25850, subdivision (a). (*Wade*, at pp. 139–140.) Relying on decisions interpreting "similar statutory language," including " ' "upon the person" ' " and " 'upon his person,' " the Court determined that "[t]he backpack was on [the defendant's] person and, accordingly, anything inside that backpack was also on his person." (*Id.* at pp. 140–142.)

7

In the course of its analysis, *Wade* addressed an earlier Court of Appeal decision, *People v. Pellecer* (2013) 215 Cal.App.4th 508, which had reversed a conviction for "carrying a dirk or dagger concealed 'upon his or her person' under former section 12020, subdivision (a)(4) (now § 21310)" where "the defendant was seen 'leaning on a closed backpack' that contained three knives." (*Wade*, *supra*, 63 Cal.4th at p. 145.) *Wade* distinguished *Pellecer* on several grounds, including that "the [*Pellecer*] defendant was merely leaning on the backpack and thus, arguably, had less immediate control over its contents than [the] defendant had in [its] case, where he was actually wearing the backpack." (*Wade*, at p. 146.) Thus, *Wade* "disapprove[d] [*Pellecer*] . . . to the extent its analysis [was] inconsistent with [the Supreme Court's] opinion, although not necessarily its holding." (*Ibid.*)

Here, Bay was never seen even touching the backpack, much less wearing it. Consistent with *Wade* and the decisions it interpreted, we conclude that the backpack was therefore not "upon [Bay] in his . . . possession" within the meaning of section 466. As a result, the conviction under that statute must be reversed.

B.      *The Second Prior-prison-term Enhancement Must Be Stricken on Remand.*

Bay also contends that the trial court erred by imposing and staying a one-year sentence for the second prior-prison-term enhancement instead of striking the enhancement. We accept the Attorney General's concession that the enhancement must be stricken on remand.

At sentencing, the trial court addressed Bay as follows: "With regards to the prison priors that you admitted, I am going to increase your sentence by one year for the [first] prison prior . . . , and with regards to the second [such enhancement] I'm going to impose that one-year term and stay it. So I'm not going to include it. So your total sentence in this matter shall be three years, eight months." The court did not address its reasons for staying the term for the second enhancement.

Under section 1385, a trial court may "strike or dismiss an enhancement" or "the additional punishment for that enhancement in the furtherance of justice." (§ 1385, subd. (b)(1).) "The trial court has no authority to stay an enhancement, rather than strike

8

it—not, at least, when the only basis for doing either is its own discretionary sense of justice." (*People v. Lopez* (2004) 119 Cal.App.4th 355, 364; accord *People v. Brewer* (2014) 225 Cal.App.4th 98, 104.) Rather, the only authority for staying an enhancement is California Rules of Court, rule 4.447, which applies when "an enhancement that *otherwise* would have to be either imposed or stricken is barred by an overriding statutory prohibition. In that situation—and that situation only—the trial court can and should stay the enhancement." (*Lopez*, at p. 365; accord *Brewer*, at p. 104.) We agree with the parties that it appears that the trial court here intended to exercise its discretion under section 1385, since there was no statute precluding Bay from being sentenced on both enhancements and rule 4.447 thus does not apply. On remand, the court is directed to strike the second enhancement.

III.

DISPOSITION

The conviction for possession of burglary tools under section 466 is reversed. The sentence is vacated, and the matter is remanded for resentencing consistent with this opinion. In all other aspects, the judgment is affirmed.

9

_____

Humes, P.J.


WE CONCUR:



_____

Margulies, J.



_____

Sanchez, J.


*People v. Bay*  A154498

Trial Court:

Superior Court of the County of Napa


Trial Judge:

Hon. Rodney G. Stone


Counsel for Defendant and Appellant:

Richard A. Tamor, Tamor & Tamor, under appointment by the Court of Appeal


Counsel for Plaintiff and Respondent:

Xavier Becerra, Attorney General

Gerald A. Engler, Chief Assistant Attorney General

Jeffrey M. Laurence, Senior Assistant Attorney General

Catherine A. Rivlin, Supervising Deputy Attorney General

Bruce M. Slavin, Deputy Attorney General


*People v. Bay*  A154498