Filed 6/26/26  P. v. Perez CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>            v.<br><br>DARVIN RAMIREZ PEREZ,<br><br>    Defendant and Appellant. | A171374<br><br>(San Francisco City & County<br>Super. Ct. Nos. 21008191,<br>21008194, 21008277, 23002270) |

Defendant Darvin Ramirez Perez (Perez) was tried before a jury on sixteen counts initially brought against him in four separate cases. Before the consolidation of these cases, three were the subject of one information (first information) and one the subject of another (second information). The trial court granted the prosecution's consolidation motion, made pursuant to Penal Code section 954.[1]

Here on appeal, Perez contends the court abused its discretion because its reasons for granting consolidation—that none of the cases was particularly inflammatory and all of the cases involved potentially cross-admissible evidence—rested on a critical factual error. In granting

---

[1] Statutory references are to the Penal Code unless otherwise stated.

1

consolidation, he points out, the court incorrectly believed that none of the alleged crimes in the second information involved residential burglaries of inhabited dwellings, or "hot prowls."

Perez argues for the first time on appeal that this error resulted in a gross unfairness so egregious as to violate his right to due process of law. Contending that there is a reasonable probability he would have obtained a better result on one of the counts for which he was convicted—the charge that he had a concealed "dirk or dagger" (a machete) on his person in violation of section 21310 (concealment count)—Perez seeks reversal of that conviction. And in a related claim anticipating a forfeiture argument from the Attorney General, he argues he received ineffective assistance of counsel.

Exercising our discretion to consider asserted error not raised in the trial court, we conclude that Perez's abuse of discretion argument is unpersuasive in light of the record available to the court at the time of its ruling. Further, even assuming for the sake of argument that the trial court erred, consolidation did not result in a gross unfairness to Perez because of the strong evidence supporting the jury's guilty verdict on the concealment count. Perez's ineffective assistance of counsel argument is meritless for the same reasons.

We affirm.

## I. BACKGROUND

In 2023, the San Francisco District Attorney's Office filed a consolidated information in case numbers 21008277, 21008194, and 21008191 charging Perez with eight counts. They were second degree burglary of a vehicle, carrying a dirk or dagger concealed on the person (which became the concealment count in the subsequent consolidated information), receiving stolen property, possession of burglary tools (two

2

counts), attempted residential burglary of an inhabited dwelling, vandalism, and receiving stolen property (a motor vehicle). These counts related to incidents alleged to have occurred on March 15, 2021 (four counts), August 15, 2021 (two counts), and August 18, 2021 (two counts).

In 2023, the San Francisco District Attorney's Office filed another information, in case number 23002270, charging Perez with eight additional counts. They were attempted first degree residential burglary of an inhabited dwelling, first degree residential burglary of an inhabited dwelling (two counts), vandalism (three counts), possession of burglary tools, and grand theft. These counts related to incidents alleged to have occurred on February 14, 2023 (four counts), November 20, 2022 (two counts), and November 27, 2022 (two counts).

Subsequently, the prosecution moved to consolidate all four cases for trial as of the same class, being related to either theft or burglary. In its motion, it briefly summarized its factual allegations. As for the three incidents referred to in the first information, it alleged that in the March 15, 2021 incident (the basis for the concealment count), Perez "was seen breaking into a locked truck and removing a suitcase. Police stopped [him] a couple of blocks away with the suitcase and arrested him. An arrest search found a machete and burglar tools." In the August 15, 2021 incident, Perez "attempted to break into an attached garage of victim's home. . . . Victim was home and observed someone at their garage door via both surveillance video and direct observation. [Perez] took off on a scooter . . . ." The August 18, 2021 incident involved police observing Perez exit a stolen vehicle.

As for the three incidents referred to in the second information, the prosecution alleged that in the November 20, 2022 incident, Perez "entered victim's garage and used tools to cut free victim's bicycle and stole the bicycle.

3

Victim was home asleep during the incident." In the November 27, 2022 incident, Perez allegedly "used several tools and took about 45 minutes to cut into victim's door and gain entry into his home. [Perez] entered the home, leaving shortly thereafter when an alarm was triggered. Victim and his children were at home and asleep during the incident." In the February 14, 2023 incident, Perez "broke a garage window at victim's home and tried to gain entry into the garage. After that failed, [Perez] tried to break through victim's front door. Victim saw [Perez] through their front door security camera and used the intercom to tell [Perez] the police had been called. [Perez] fled . . . ."

Perez did not file a written opposition to the motion. At the hearing on the motion, his counsel requested that the court delay ruling until the trial judge could consider the motion, which the court declined to do. Before inviting argument, the court said the charges appeared to be "clearly the same class of crime" and that two of them, while charged as first degree residential burglaries, were not "hot prowls" because "no witnesses were home." It added, "There's nothing about those crimes that would be prejudicial or inflammatory compared to the attempt to steal a vehicle and personal property. And all cases seem to be of equal strength."

Perez's counsel responded that arguably the charges were of the same class. But, he said, consolidation would not in fact save time because there were no overlapping witnesses and jury selection would only take half a day to a day.

The court noted that it takes some time to select a jury, that evidence of the crimes could be cross-admissible under Evidence Code section 1101, subdivision (b) to show intent, and that there was nothing prejudicial in consolidating the cases, since a weak case was not being consolidated with a

4

strong case and none of the cases were particularly inflammatory. It granted the motion.

The prosecution then filed a consolidated information containing the 16 counts against Perez (and additional allegations).

After the presentation of evidence and closing arguments, the jury began deliberating on the afternoon of Friday, July 19, 2024, and then continued deliberations on the following Monday, July 22. The next morning, Tuesday, July 23, the jury asked the court if finding Perez not guilty had to be a unanimous decision, giving as an example that the jury was divided 10 to 2 on the concealment count. Later that morning, after the court responded that their decisions had to be unanimous, the jury told the court it had agreed on 13 counts but was unable to reach a unanimous verdict on three, including the concealment count. The foreperson indicated the jury had been split 10 to 2 on the concealment count for two and a half days (approximately the length of all the jury's deliberations), and opined that further deliberations would not result in a verdict. Most of the jurors thought they were hopelessly deadlocked on the concealment count but two said the jury "maybe" could reach a verdict after further deliberation. The court asked the jury to continue deliberating.

The jury returned the next morning with a guilty verdict on the concealment count; it was deadlocked on the other two counts (for attempted first degree residential burglary and vandalism, both unrelated to the concealment count). The court declared a mistrial on those two counts.

Perez was found guilty of all counts decided by the jury except that he was acquitted of receiving a stolen motor vehicle and one count of vandalism (both also unrelated to the concealment count). The court sentenced Perez to

5

a total sentence of six years and eight months in state prison. It imposed a two-year concurrent sentence for the concealment count.

Perez filed a timely notice of appeal.

## II. DISCUSSION

### A. *The Court Did Not Prejudicially Err by Granting the Prosecution's Motion To Consolidate*

Perez first argues that the court abused its discretion by granting the prosecution's motion to consolidate because its conclusions that no case was particularly inflammatory and that the cases involved possibly cross-admissible evidence to show intent were based on a critical factual error. That is, Perez contends, although the prosecution in its motion argued that people were home during the residential burglaries alleged in the second information (which did not contain the concealment count), the court said at the motion hearing that there were no "hot prowls," apparently meaning residential burglaries of homes in which victims were present. Perez further contends the court's error resulted in gross unfairness to his chances of avoiding conviction on the concealment count, requiring reversal of that conviction.[2]

### 1. Legal Standards

Under our Penal Code, "[a]n accusatory pleading may charge . . . two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated." (§ 954.)

---

[2] Perez did not make these arguments below, but the People do not assert forfeiture and Perez also claims he received ineffective assistance of counsel, which we discuss *post*. Thus, we exercise our discretion to consider these arguments.

In *People v. Soper* (2009) 45 Cal.4th 759 (*Soper*), our Supreme Court comprehensively outlined the considerations governing joinder of charges offenses that are of the same class, which Perez concedes is the case here.

"The purpose underlying [section 954] is clear:  joint trial 'ordinarily avoids the increased expenditure of funds and judicial resources which may result if the charges were to be tried in two or more separate trials.' [Citation.]  'A unitary trial requires a single courtroom, judge, and court attach[és].  Only one group of jurors need serve, and the expenditure of time for jury voir dire and trial is greatly reduced over that required were the cases separately tried.  In addition, the public is served by the reduced delay on disposition of criminal charges both in trial and through the appellate process.'  [Citations.] . . . For these and related reasons, consolidation or joinder of charged offenses 'is the course of action preferred by the law.' " (*Soper*, *supra*, 45 Cal.4th at p. 772.)

" '[T]he *prosecution* is *entitled* to join offenses under the circumstances specified in section 954.  The burden is on the party seeking severance to clearly establish that there is a substantial danger of prejudice requiring that the charges be separately tried.  [Citations.]  When the offenses are [properly] joined for trial the defendant's guilt of all the offenses is at issue and the problem of confusing the jury with collateral matters does not arise.  The other-crimes evidence does not relate to [an] offense for which the defendant may have escaped punishment.  That the evidence would otherwise be inadmissible [under Evidence Code section 352] may be considered as a factor suggesting possible prejudice, but countervailing considerations [of efficiency and judicial economy] that are not present when evidence of uncharged offenses is offered must be weighed in ruling on a . . . motion [to sever properly joined charges].  *The burden is on the defendant therefore to*

7

*persuade the court that these countervailing considerations are outweighed by a substantial danger of undue prejudice.'* " (*Soper, supra,* 45 Cal.4th at p. 773, original italics.)

"A defendant, to establish error in a trial court's ruling declining to sever properly joined charges, must make a ' "*clear showing of prejudice* to establish that the trial court *abused its discretion . . . .*" ' [Citation.] A trial court's denial of a motion to sever properly joined charged offenses amounts to a prejudicial abuse of discretion only if that ruling ' " ' " 'falls outside the bounds of reason.' " ' " ' [Citation.] We have observed that 'in the context of properly joined offenses, "a party seeking severance must make a *stronger* showing of potential prejudice than would be necessary to exclude other-crimes evidence in a severed trial." ' [Citations.]

[¶] . . . [¶]

"In determining whether a trial court abused its discretion under section 954 in declining to sever properly joined charges, 'we consider the record before the trial court when it made its ruling.' [Citation.] Although our assessment 'is necessarily dependent on the particular circumstances of each individual case, . . . certain criteria have emerged to provide guidance in ruling upon and reviewing a motion to sever trial.' [Citation.]

"First, we consider the cross-admissibility of the evidence in hypothetical separate trials. [Citation.] If the evidence underlying the charges in question would be cross-admissible, that factor alone is normally sufficient to dispel any suggestion of prejudice and to justify a trial court's refusal to sever properly joined charges. [Citation.] Moreover, even if the evidence underlying these charges would *not* be cross-admissible in hypothetical separate trials, that determination would not itself establish

8

prejudice or an abuse of discretion by the trial court in declining to sever properly joined charges. . . .

"If we determine that evidence underlying properly joined charges would *not* be cross-admissible, we proceed to consider 'whether the benefits of joinder were sufficiently substantial to outweigh the possible "spill-over" effect of the "other-crimes" evidence on the jury in its consideration of the evidence of defendant's guilt of each set of offenses.' [Citations.] In making *that* assessment, we consider three additional factors, any of which— combined with our earlier determination of absence of cross-admissibility— might establish an abuse of the trial court's discretion: (1) whether some of the charges are particularly likely to inflame the jury against the defendant; (2) whether a weak case has been joined with a strong case or another weak case so that the totality of the evidence may alter the outcome as to some or all of the charges; or (3) whether one of the charges (but not another) is a capital offense, or the joinder of the charges converts the matter into a capital case. [Citations.] We then balance the potential for prejudice to the defendant from a joint trial against the countervailing benefits to the state." (*Soper*, *supra¸* 45 Cal.4th at pp. 774–775, fn. omitted, original italics.)

Moreover, "even if a trial court's ruling on a motion to sever is correct at the time it was made, a reviewing court still must determine whether, in the end, the joinder of counts or defendants for trial resulted in gross unfairness depriving the defendant of due process of law." (*Soper, supra,* 45 Cal.4th at p. 783.) "Whether joinder worked a gross unfairness turns upon assessing whether it was 'reasonably probable that the jury was influenced by the joinder in its verdict of guilt.' " (*People v. Vargas* (2020) 9 Cal.5th 793, 819.)

9

A court's grant of a motion to consolidate is reviewed for abuse of discretion in light of the record before the court when it made its ruling. (*Soper, supra,* 45 Cal.4th at p. 774.)  Under this standard, "[t]he trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712, fns. omitted.)  "A trial court abuses its discretion when the factual findings critical to its decision find no support in the evidence." (*People v. Cluff* (2001) 87 Cal.App.4th 991, 998.)

## 2. Perez Fails To Show the Court Abused Its Discretion in Consolidating All of the Cases

Perez argues the trial court's order granting the prosecution's consolidation motion was unsupported by evidence and an abuse of discretion because it was based on the court's mistaken impression that none of the counts in the second information (which did not contain the concealment count) involved "hot prowls."

Perez is correct that the court erred in stating at the motion hearing that the second information did not include any alleged "hot prowls"— meaning residential burglaries of homes with victims present.  Specifically, the prosecution alleged that in the November 27, 2022 incident, Perez entered a home while the victim and his children were sleeping inside, Perez leaving when an alarm was triggered.[3]  Relying on *People v. Harris, supra,*

---

[3] At the time of its ruling, the court also had before it the prosecution's allegation that on November 20, 2022, Perez entered a garage while the victim was at home sleeping.  This allegation did not identify the location of the garage in relationship to the victim's home, a critical matter in determining whether it was a part of the "inhabited dwelling." (See *People v. Rodriguez* (2000) 77 Cal.App.4th 1101, 1107 [To determine "whether a structure is part of an inhabited dwelling, the essential inquiry is whether the structure is 'functionally interconnected with and immediately contiguous

224 Cal.App.4th at page 91, Perez argues that the court's error was the basis for its improper conclusions that the cases involved potentially cross-admissible evidence and none of the counts involved incidents that were particularly inflammatory.

The People respond that the information containing the concealment count includes a count alleging that Perez attempted a residential burglary of an attached garage of an inhabited dwelling (the August 15, 2021 incident) and that, therefore, the cases were of the same class, no one case was more inflammatory than another, and there was potentially cross-admissible evidence.

Perez counters that, for example, a burglary committed while one or more people are present is a violent felony, whereas an attempted burglary under identical circumstances is not. (*People v. Bedolla* (2018) 28 Cal.App.5th 535, 540–541.) He argues that actual entry into an occupied home is qualitatively different than an attempted entry and a more inflammatory crime. "[I]n an attempted burglary," he writes, "the would-be-intruder . . . has not entered any dwelling from which he must escape or from which an occupant may try to forcibly expel him; the occupant remains safe unless and until the suspect gains entry."

We conclude that, despite the court's factual error, Perez has failed to show it abused its discretion because he has not clearly shown undue prejudice flowed from the court's error.

---

to other portions of the house."]; *People v. Harris* (2014) 224 Cal.App.4th 86, 91 ["A garage *sharing a roof and a wall with a residence* is part of an inhabited dwelling even though there is no interior access" (italics added)].) Perez therefore fails to meet his burden as appellant of establishing that the court erred in concluding this incident did not involve a hot prowl. But even if this incident did involve a hot prowl, we would reach the same conclusions, for the same reasons.

We review the trial court's ruling, not its reasoning. " ' 'No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." [Citation.]' (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19.)" (*People v. Zapien* (1993) 4 Cal.4th 929, 976.) In short, "[o]ur task is to review the trial court's *ruling*, not its reasoning." (*People v. Turner* (2020) 10 Cal.5th 786, 807.)

In response to the People's assertion of the black-letter *D'Amico* rule, Perez suggests we are dealing here with a factual finding unsupported by evidence (*People v. Cluff*, *supra*, 87 Cal.App.4th at p. 998), not a legal ruling that may be supported on appeal on any correct ground regardless of the trial court's reasoning. But as *Zapien* illustrates, the rule of *D'Amico* still applies where some immaterial factual misunderstanding may have played a part in the court's legal reasoning. (See *People v. Zapien*, *supra*, 4 Cal.4th at p. 976 [trial court's incorrect side comment about admissibility of preliminary hearing transcript even if motive to cross-examine had been " 'entirely different' " was collateral to its ultimate legal conclusion that motive to cross-examine at preliminary hearing was "sufficiently similar" to motive at trial].) The critical factual finding here is not the court's erroneous statement about hot prowls, but its determination that no case was particularly inflammatory, which was the basis for the two conclusions that Perez challenges on appeal. Substantial evidence supports *that* finding, whether or not it was cited specifically by the trial court.

Two aspects of the prosecution's factual assertions are particularly relevant. First, the prosecution indicated that, both when Perez *attempted* to enter a home via a residential burglary, one of the charges in the first information (as well as in the second), or *completed* entry into a home via a residential burglary (one of the charges in the second information), *victims were present*. Specifically, regarding the attempted residential burglary count contained in the first information, the prosecution asserted that Perez was observed by the victim via surveillance video and direct observation attempting to break into an attached garage of the victim's home. Regarding the residential burglary count contained in the second information, the prosecution asserted that Perez "took about 45 minutes to cut into victim's door and gain entry into his home[,] . . . leaving shortly thereafter when an alarm was triggered. Victim and his children were at home and asleep during the incident." Second, the prosecution did *not* assert that Perez took any actions intended to harm any of his victims.

Given the prosecution's factual contentions, we do not see how the completed residential burglary count was particularly more inflammatory than the attempted burglary count. As we have indicated, Perez points to distinctions in the law regarding a completed residential burglary and an attempted one to argue the former is far more potentially dangerous and, therefore, more inflammatory. But his arguments are not particularly relevant to whether a jury would be so inflamed by the completed burglary as to cause it to unfairly find Perez guilty of a matter unrelated to either charge—such as the concealment count.

In our view, both the attempted and completed residential burglaries as described by the prosecution presented significant danger because of the presence of victims in both cases. One might argue that a burglar who has

13

gained entry into a home increases that danger because the burglar might lash out violently if confronted by the homeowner in an enclosed space, but one cannot discount the possibility that a burglar attempting to break into the home might also be confronted by the homeowner and that the burglar might respond with violence. Moreover, the jury could hardly be particularly more inflamed by a defendant's successful entry into a home when in the other instance the defendant was seeking to do just that but failed for some reason unrelated to his intent.

Perez's unpersuasive contention that the completed residential burglary is much more inflammatory than the attempted residential burglary is the basis for his claim that the court erred in concluding that evidence in the cases was potentially cross-admissible to show intent and that no one case was particularly inflammatory. We therefore reject his claim that the trial court abused its discretion in granting the prosecution's consolidation motion.

### 3. Any Court Error Did Not Result in Gross Unfairness to Perez

Even assuming for the sake of argument that the court abused its discretion by relying on a mistaken factual premise, Perez must still show the error resulted in gross unfairness to him in order to win reversal of the concealment count, i.e., that it is reasonably probable that he would have fared better regarding that count but for the court's error. (*Soper*, *supra*, 45 Cal.4th at p. 783; *People v. Vargas*, *supra*, 9 Cal.5th at p. 819.) He does not do so.

Section 21310, the legal basis for the concealment count, provides that, subject to certain exemptions inapplicable here, "any person in this state who carries concealed upon the person any dirk or dagger is punishable by imprisonment in a county jail not exceeding one year or imprisonment

14

pursuant to subdivision (h) of Section 1170." Perez does not contest that a machete qualifies as a dirk or dagger.

Perez argues that the proof of his guilt on the concealment count was not strong because Dorantes, the testifying officer at trial, did not see Smith, the officer who detained and conducted a pat down search of Perez, remove the machete from a concealed location on Perez's person. We disagree.

There was strong circumstantial evidence of Perez's guilt on the concealment count, most of which Perez ignores. A witness testified that around noon on March 15, 2021, he was walking along a sidewalk when he heard the sound of glass shattering. When he looked in the direction of the sound, he saw from 25 to 30 feet away the back of a person pulling a purple suitcase out of a vehicle window. The person also had a backpack on their back.

The witness contacted the police and gave a description of what he saw. Shortly thereafter, police brought him to where a person was being detained. The witness recognized the person from his apparel and the backpack and suitcase that were also there. At trial, he identified the person as Perez.

San Francisco Police Department Sergeant David Dorantes testified that at around 12:25 p.m. on March 15, 2021, he was on patrol in a police vehicle with two other officers when they responded to a call about "an auto boost" that had occurred a couple of blocks away. As they drove, they located a person fitting the description of the suspect provided in the call. He was next to a purple suitcase, one of the items reported to have been stolen.

The police having passed by the suspect, one officer exited the vehicle to keep an eye on him as the other two circled the block. Upon returning, they saw the suspect continuing to walk. Dorantes stayed in the vehicle as the other officer, Sergeant Smith, got out and detained him a short distance

15

away.  Dorantes kept his eye on Smith as Smith initiated a "pat down" search of the still uncuffed suspect, which is a "search of the outer clothing, essentially," without going into their pockets.

Within a minute, Smith handed Dorantes a machete, after Dorantes exited his vehicle and approached Smith while Smith was conducting the pat down search.  Because Smith's back was turned to Dorantes during the search, Dorantes did not actually see Smith find the machete and take it from the suspect.  However, Dorantes also did not see Smith interact with anyone else during that minute, and Smith's ready approach of Perez and pat down of him indicates that Perez was not visibly carrying a machete when he was stopped.  At trial, Dorantes identified Perez as the suspect they detained.

Finally, Perez himself testified at trial that the machete was "something they took from me that day."  He further testified, "I don't know how it got into my possession, but I had it with me," but that he did not know "where they took it off from me."

In our view, a rational juror could only conclude from this evidence that Perez was guilty beyond a reasonable doubt on the concealment count.  Although Perez contends the evidence is not strong because Dorantes did not see Smith actually remove the concealed machete from Perez's person, he offers no other explanation for where Smith could have possibly obtained it.  Nor does he provide any authority suggesting that circumstantial evidence by its nature should not be considered strong evidence; indeed, courts have repeatedly found to the contrary (see, e.g., *People v. Landry* (2016) 2 Cal.5th 52, 79 [noting, in rejecting a challenge to a court's joinder of charges, that "the discovery of a prison-made weapon in a cell solely occupied by defendant constituted strong circumstantial evidence that he possessed that weapon"]; *People v. Poggi* (1988) 45 Cal.3d 306, 322 [noting, in rejecting an abuse of

16

discretion challenge to a trial court's denial of a motion to sever, that the evidence that defendant was seen walking from the victim's home to his own, wet and bloody, about the time of the attack was "[s]trong circumstantial evidence" that he had attacked her].)[4]

In his opening brief, Perez argues that the jury's initial inability to reach a verdict on the concealment count "demonstrates that the evidence was close and that reasonable doubt existed during deliberations," making it reasonably probable the jury was unfairly influenced by the "emotionally charged evidence" of Perez's completed residential burglary. We disagree with this assessment as well. As we have discussed, after about two and a half days of deliberation, the jury told the court it could not reach verdicts on three counts, including the concealment count, for which the jury had voted 10 to 2.

But Perez ignores that over those two and a half days, the jury deliberated over *sixteen* counts, reaching verdicts on 13, including two not guilty verdicts. During this time also, the jury requested a readback unrelated to the concealment count, suggesting they were particularly struggling over a different count. Further, not all jurors believed they were

---

[4] It might be argued that Smith could have found the machete in Perez's backpack. However, Dorantes's description of Smith's pat down search did not include a search of the backpack. In any event, our Supreme Court has indicated that a person found in possession of an item contained in a backpack that the person is carrying is guilty of possession of that item on their person. (See *People v. Wade* (2016) 63 Cal.4th 137, 140, 143–146 [construing under another statute that carrying a loaded firearm "on the person" included carrying of the firearm in a backpack worn on the body, distinguishing *People v. Pellecer* (2013) 215 Cal.App.4th 508, 511 (defendant merely leaning on a closed backpack containing knives found not to have the knives on his person under a previous version of section 21310)].) The only logical conclusion from Dorantes's testimony is that Perez was carrying his backpack when he was stopped, as Perez was walking at the time.

hopelessly deadlocked on the concealment count, and they reached a verdict on that count (and not the other two) the morning after the court asked them to deliberate further. These circumstances do not especially indicate the jury found the concealment count to be a particularly close call after considered deliberation on the matter. In light of the evidence and circumstances we have discussed, we think it more likely that the concealment count simply required some more discussion after two and a half days of deliberating over sixteen counts charging crimes in six different incidents, with a number of those crimes being of a more substantial nature than the concealment count.

Perez cites a couple of cases for the first time in his reply brief, thereby unfairly depriving the People of the opportunity to address them, in which courts viewed jury deadlocks, among other things, as indications the jury was particularly challenged to reach a verdict. The cases he relies on are distinguishable as involving a good deal more than announced deadlocks indicating the jury was having difficulty reaching a verdict. (See *People v. Diaz* (2014) 227 Cal.App.4th 362, 384–385 [jury asked for multiple readbacks and asked two questions, and reported itself deadlocked more than once]; *People v. West* (1983) 139 Cal.App.3d 606, 610 [jury asked for rereading of a substantial portion of testimony and of some instructions, along with reporting itself deadlocked at one point].) The circumstances in these cases suggested prejudice much more strongly than what we have here—a question of clarification on the unanimity requirement and one indication after a relatively modest period of deliberation on many counts that it could not reach a verdict on the concealment count, with two jurors even then stating it remained possible that the jury could reach a verdict.

Furthermore, as we have already discussed, there was nothing particularly inflammatory about the residential burglary alleged to have

18

occurred in the second information, as compared to the crimes alleged in the first information, which contained the concealment count.  Perez does not point to any evidence presented at trial that causes us to alter this conclusion.  The lack of a particularly inflammatory case also causes us to conclude that, to the extent the jury did consider the concealment count to be a close call, it is highly unlikely its consideration on the concealment count was affected in any way by the court's consolidation of the four cases.

In short, we conclude it was not reasonably probable that, but for the court's purported error, Perez would have received a more favorable outcome on the concealment count.  This is a second, independent reason why we shall not reverse his conviction on this count.

## B. *Perez Did Not Receive Ineffective Assistance of Counsel*

Finally, Perez argues that he received ineffective assistance of counsel because his trial counsel failed to object to consolidation under *Soper* on the ground that the second information contained particularly inflammatory charges.

Ineffective assistance of counsel results when counsel's performance is both deficient and prejudicial.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687.)  Deficient performance results when counsel's "representation fell below an objective standard of reasonableness . . . under prevailing professional norms."  (*Id*. at pp. 687–688; *People v. Ledesma* (1987) 43 Cal.3d 171, 216–218.)  Prejudice exists where there is "a reasonable probability" that without counsel's errors, "the result of the proceeding would have been different."  (*Strickland*, at p. 694.)

As we have already discussed in section A of this discussion section, *ante*, Perez fails to show the court below abused its discretion in granting the prosecution's consolidation motion or that he was prejudiced by any

purported court error.  For these same reasons, we reject his ineffective assistance of counsel claim.

## III. DISPOSITION

The judgment is affirmed.

STREETER, J.

WE CONCUR:

BROWN, P. J.
SWEET, J.*

---

\* Judge of the Marin Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.